J. L. SUTTON, Appellant, v. CHARLES E. RISSER, *et al.*

Reformation: EVIDENCE: *Laches.* A self constituted agent falsely represented that the managing member of a defendant firm had read and pronounced satisfactory a written contract of sale with plaintiff, the terms of which had previously been agreed on, and thereby induced the other member of·the firm to sign it without reading the contents  The contract signed did not express the actual agreement, as it contained a clause of which the defendants were ignorant. It was not shown that plaintiffs authorized the agent to insert the clause, or to make the false representations. *Held*, that the negligence of defendant in signing the contract was not so gross as to bar them of the right of reformation of the contract on the ground of fraud and mistake  *Distinguishing Wallace v. Railway Co.*, 67 Iowa, 547; *Glenn v. Statler*, 42 Iowa, 107; *McCormack v. Molburg*, 43 Iowa, 561; *McKinney v. Herrick*, 66 Iowa, 414; *Jenkins v. Coal Co* , 82 Iowa, 613.

Sales: REFUSAL TO ACCEPT. Where a buyer refused to accept goods on account of their quality, he cannot thereafter justify such refusal by alleging a shortage which the seller offered to correct.

EVIDENCE OF SHORTAGE. The evidence is insufficient to establish a claim of shortage, in the quantity of goods sent to a purchaser, where the contract was for an exchange of land in consideration of six thousand dollars' worth of goods, shelf-worn and out of style, taken at wholesale or cost prices, since such mode of computation places a higher price upon the property than its actual value, and does not furnish any information from which that value can be determined.

*Appeal from . Polk District Court.—*HON. THOMAS F. STEVENSON, Judge.

THURSDAY, FEBRUARY 3, 1898.

ACTION to recover upon an agreement in writing for the delivery of merchandise. The defendants allege a mistake in the agreement, and ask that it be corrected. The action was tried as in equity, and a decree was rendered in favor of the defendants. The plaintiff appeals.— *Affirmed.*

*Carr & Parker* for appellant.

*Bishop, Bowen & Fleming* for appellees.

ROBINSON, J.—The agreement in suit was made by the plaintiff and the defendants under the firm name of C. E. Risser & Bro., and as signed contains the following: "C. E. Risser & Bro. have this day bargained and sold to J. L. Sutton six thousand dollars worth of goods, of which five thousand dollars is ladies' cloaks, of various sizes and styles, which is now in stock in store, and one thousand dollars in dress trimmings, fancy goods, and notions, and one hundred and ninety-seven dollars in cash. No damaged goods to be taken. Said goods to be invoiced at wholesale or cost price. And take in payment for same six hundred acres of land in Juneau county, Wisconsin. * * * Consideration, ten dollars per acre or six thousand dollars, said land to be free and clear of all incumbrance. Said J. L. Sutton to give warranty deed and furnish abstract for same. Said sale to be closed within thirty days from this date." A description of the land to be conveyed was inserted in the agreement. The plaintiff delivered to the defendants a warranty deed and abstract for the land within the required time, and the defendants, to perform their part of the agreement, boxed and shipped to the plaintiff, at Algona, merchandise which was invoiced at the valuation of six thousand dollars. The plaintiff refused to accept it, for the alleged reason that it consisted in

large part of old, decayed, burned, and worn-out clothing, and that it was not of the quality required by the agreement. The defendants admit that much of the merchandise was not new, and that some of it was damaged, but insist that it was of the kind which the agreement which the parties actually made contemplated, and that much of it was selected and agreed upon by the parties about the time the agreement was signed, and that the words, "no damaged goods to be taken," were inserted in the agreement by mistake and fraudulently. The defendant asks that the contract be reformed, and made to express the true agreement. The district court granted that relief, and adjudged that the agreement had been performed by the defendants. During the first part of the year 1894, and for some time prior to that year, the defendants carried on, in East Des Moines, a department store, and in West Des Moines a dry goods store. Ladies' cloaks, dress goods, and other articles were kept for sale in each store. In January of the year specified, a resident of Des Moines named Griffith, asked the defendants if they had any goods they would exchange for land, and said, in explanation, that other merchants of the city found it desirable to trade off old stock for land. The defendants said they would consider the matter, and afterwards told Griffith they might make an exchange of the character indicated. Griffith said he thought he could negotiate a trade, and from time to time made different propositions to the defendants, none of which were accepted. Finally Griffith and a real estate agent of Des Moines, named McClure, brought to the defendants one Nicoulin, a resident of Algona, with whom negotiations were had. He returned to Algona, and a short time thereafter received from McClure, for execution, a contract drawn by McClure, and signed by the defendants. It was in all respects like the contract in suit, excepting that the name "Bradley & Nicoulin" appeared therein,

instead of Sutton's, and no provision was made for the payment of money. The writing was given to Sutton, who changed it by inserting his own name in lieu of that of Bradley and Nicoulin, and by inserting the clause in regard to the payment of one hundred and ninety-seven dollars in money. As we understand the facts, he then signed the writing, and returned it to McClure. About that time a fire occurred in the east side store of the defendants, which damaged some of their goods; and, when the altered agreement was presented to them, they declined to approve it, on the ground that by reason of the fire they could not furnish the goods it required. It appears to have been retained by McClure, and was marked by him, "Canceled on account of fire." It appears, however, that Griffith and McClure continued their efforts to effect a trade. The plaintiff went to Des Moines, and the writing in suit was signed, and the merchandise was shipped to the plaintiff, and refused by him, as already stated. There is some conflict in the evidence in regard to the making of the contract; but we are satisfied that the facts are substantially as follows: Neither Griffith nor McClure was authorized to act as agent for the defendants, and neither was authorized to do more for them than to submit offers, although the defendants knew before the transaction was closed that a commission was to be paid to Griffith and McClure from the money payment for which the contract provided. After signing the contract, the plaintiff examined a large quantity of goods in the basement of the west-side store, which the defendants proposed to use in filling the contract. Those goods included some that had been damaged by the fire on the east side, and which had been transferred to the west side. A part of the goods were shopworn and out of style, and were not salable in Des Moines at cost prices; but the plaintiff knew what they were, and his most serious objections are made to them. It was

fully understood and agreed that the goods thus examined were to be included in those to be sent to the plaintiff.

The writing in controversy seems to have been prepared and signed substantially as follows: After the terms of the agreement with the plaintiff had been settled, McClure copied the first agreement, as it had been changed by the plaintiff, including the provision that no damaged goods should be taken, and gave the copy to Griffith. He took it to W. H. Risser, a member of the defendant firm, and told him that his brother, C. E. Risser, had examined the writing, and was satisfied with it, and had sent it to him to attach to it the firm name. Griffith represented that he was in a hurry, and W. H. Risser, relying upon his statements respecting C. E. Risser, and supposing that it expressed the agreement which had actually been made, affixed to it the firm signature, without reading it. His brother had not in fact seen it, nor in any manner approved it. Neither of them knew at the time that it provided that no damaged goods were to be taken, and in that particular it did not represent the agreement of the parties. That the plaintiff knew that he was to have damaged and unsalable goods is clearly established. He knew that the defendants refused to ratify the first agreement as changed, because they were unable to comply with its terms on account of the fire. We are satisfied that the goods sent to the plaintiff were in all respects of as good quality and as valuable as were those for which he contracted, and the larger part of them were the same goods. After the defendants had boxed the goods and delivered them at the railway station for shipment, they discovered that the land which the plaintiff was to convey to them was practically worthless, and there was some delay in shipping the goods; but the plaintiff insisted that the defendants should fulfill their part of the agreement,

and the goods were shipped, and the money required by the contract was paid. It is not shown that the plaintiff authorized McClure to insert in the contract the provision in question, nor that he directed Griffith to make to W. H. Risser the representations which induced him to sign the writing without reading it; but he is endeavoring to take all the advantage to himself possible from what they did and said. When the writing was presented to him for his signature, he must have known that it did not embody the contract which had been made, and was chargeable with knowledge of what had been done to secure it; or, if that be not true, he did not understand its contents, and signed it under a mistake of fact. If he knew what it contained, he was constructively, at least, a party to the fraud which had been perpetrated upon the defendants; and, if he did not know its contents, the mistake as to what it provided for was mutual. In view of all the circumstances of the case, we do not regard the fact that he signed the contract before he examined the goods as material.

We are of the opinion that, whether the contract was procured by fraud or mistake, the defendants are entitled to its reformation, unless they are estopped by their own laches from obtaining that relief. See 2 Pomeroy, Equity Jurisprudence, sections 852, 853. It is said in 3 Pomeroy, Equity Jurisprudence, section 1376, that "equity has jurisdiction to reform written instruments in but two well-defined cases: (1) Where there is a mutual mistake,—that is, where there has been a meeting of the minds, an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto; and (2) where there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining parties. In such cases the instrument may

be made to conform to the agreement or transaction entered into, according to the intention of the parties."

It is insisted by the appellant that the transaction in question is within the rule of numerous cases in which relief has been denied to parties who sought to be relieved from contracts they had entered into under a mistake respecting their scope and effect, and among the cases cited to support the claim thus made are *Wallace v. Railway Co.*, 67 Iowa, 547; *Glenn v. Statler*, 42 Iowa, 107; *McCormack v. Molburg*, 43 Iowa, 561; *McKinney v. Herrick*, 66 Iowa, 414, and *Jenkins v. Coal Co.*, 82 Iowa, 618. But an examination of these cases will show that none of them involved facts which, in principle, were the same as those which must control in this case. Had the defendants not been influenced not to read the contract by artifice or false statement on the part of others interested in it, the rule of the cases cited would have applied. But the contract was signed by the defendants in consequence of the false statements of Griffith to W. H. Risser, that his brother had seen and approved it. C. E. Risser was the member of the firm who negotiated its contracts, and W. H. Risser attended to the office work. It was, therefore, natural that he should rely upon the conclusions of his brother. He did not exercise the highest degree of care and diligence which prudent men would be apt to exercise in matters of such importance, but it does not appear that he knew of any reason for questioning the truthfulness of Griffith; and since the plaintiff has not been misled by what was done, and will have all the rights to which he was entitled under the agreement actually made, we do not think it should be held that the negligence of the defendants in signing the contract was so gross as to debar them from relief. 2 Pomeroy Equity Jurisprudence, section 856. To enforce the writing as signed,

would perpetrate a great wrong, and be so unconscionable that a court of equity should not hesitate to prevent it.

II.   It is claimed that the invoice price of the goods sent to the plaintiff lacked six hundred and forty-nine dollars and ten cents of six thousand dollars, and it is insisted that he had the right to reject all of the goods sent because of the shortage. The evidence shows that the plaintiff did not reject the goods for that reason, but because of their quality. The defendants offered to correct "any error or discrepancy," but the plaintiff refused to accept the offer, and would not receive the goods. His refusal to accept any of the goods cannot now be justified by the alleged failure of the defendants to furnish a small quantity which he refused to receive.

III.   Whether there was, in fact, any shortage in the goods sent, is a question which has not received much attention in argument. The evidence respecting it is conflicting, and the plaintiff does not complain because he was not permitted to recover for shortage, although he refers to it in argument, in connection with his alleged right to reject all of the goods, because all required by the contract were not sent. The contract required the defendants to furnish "six thousand dollars' worth of goods," but that amount was to be made up with goods taken "at wholesale or cost prices." The evidence shows that to have been much greater than the actual value of the goods, but does not furnish any information from which that value can be determined. The evidence does not satisfy us that there was any shortage, nor show what the recovery should have been had the shortage existed, and we conclude that we are not authorized to allow anything on account of it. The judgment of the district court is AFFIRMED.