## BROWN CITY SAVINGS BANK v. WINDSOR.

### (Circuit Court of Appeals, Sixth Circuit.   June 26, 1912.)

### No. 2,245.

1. INSURANCE (§ 150*)—CONSTRUCTION OF CONTRACT—STANDARD MORTGAGE CLAUSE.

A policy of insurance on mortgaged property expressly insuring the mortgagor in a stated sum, although it has a mortgage clause of standard form attached providing that any loss shall be payable to the mortgagee as his interest may appear and that as to the interest of the mortgagee only therein it shall not be invalidated by any act or neglect of the mortgagor, is primarily a contract for insurance of the interest of the mortgagor and remains such so long as he does not violate its conditions, and it is only in case of such violation that the secondary contract takes effect for the benefit of the mortgagee alone.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 305–307; Dec. Dig. § 150.*]

2. BANKRUPTCY (§ 159*)—VOIDABLE PREFERENCE—PREFERENTIAL MORTGAGE—PROCEEDS OF INSURANCE ASSIGNED TO MORTGAGEE.

An insolvent corporation within four months prior to its bankruptcy executed a mortgage to a bank to secure an antecedent debt under such circumstances as to render it a voidable preference. The mortgage required the bankrupt to keep the property insured and to assign the insurance to the bank, and provided that on its failure to do so the bank might effect the insurance, and that the sum paid therefor should be a lien on the property. At the time the mortgage was made, the bank applied for insurance, and on issuance of the policy paid the premium. The policy was issued to the bankrupt with a standard mortgage clause attached making any loss payable to the bank as its interest might appear and providing that the insurance, as to the interest of the mortgagee only therein, should not be invalidated by any act or neglect of the mortgagor. A part of the property burned, and the insurance, less in amount than the mortgage debt, was collected by the bank which charged against

it the amount of the premium paid. The bankrupt had not violated any condition of the policy to invalidate its interest therein. *Held*, that the insurance contract was no less a preference than the mortgage, and that its proceeds were a substitute for the mortgage pro tanto and recoverable by the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248, 262. 268-281; Dec. Dig. § 159.*]

Appeal from the District Court of the United States for the Eastern District of Michigan.

Suit in equity by John Windsor, trustee in bankruptcy of the Maple Valley Canning Company, against Brown City Savings Bank. Decree for complainant, and defendant appeals. Affirmed.

W. H. Witt, of Brown City, Mich. (Thos. A. E. Weadock, of counsel), for appellant.

W. R. Walsh, of Port Huron, Mich. (Walsh & Walsh, on the brief), for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SATER, District Judge.

WARRINGTON, Circuit Judge. This cause, in bankruptcy, was heard in the court below upon bill of complaint and answer, cross-bill and answer, and replications. The Maple Valley Canning Company, a corporation of Michigan, doing business in Brown City of that state, was adjudged bankrupt July 16, 1906, and the trustee, Windsor, was appointed August 11th following. The important issues involve:

(1) The validity of a mortgage given by the bankrupt, as an alleged preference, bearing date April 10, 1906, recorded April 13th, to the Brown City Savings Bank, for $4,187.02 (to secure it and certain other creditors) upon the real estate and plant of the bankrupt.

(2) Was the mortgage, as far as it purports to secure the bank, given in pursuance of a promise made by the bankrupt, on September 15, 1905, so to secure about $2,038, which it then owed the bank, in consideration of the bank's releasing $1,500 then in its possession (derived from collections it had made of invoices of the bankrupt and covered by instruments in the form of warehouse receipts previously given by it to the bank to secure advances), and consequently as regards the bank is the mortgage to be considered as of September 15th instead of the date it bears?

(3) The title to certain proceeds of insurance amounting to $1,249, received by the bank June 7, 1906, under a policy of fire insurance issued in the name of the bankrupt May 10, 1906, with the standard mortgage clause attached, upon certain improvements situated on the mortgaged property, which were partially destroyed by fire on May 25, 1906.

Testimony was taken and documentary proofs were offered before a special examiner. The decree below was that the mortgage was invalid as against the trustee for reasons stated in the opinion, that the proceeds of insurance are a substitute for such invalid mortgage, and that the bank forthwith pay same with interest to the trustee. It was con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ceded in the trial court that the mortgage, when considered as of its date, operated as a preference; and, independently of concession, this is clearly true. The effort to show an oral agreement of September 15, 1905, for a mortgage failed. It is not necessary to discuss the evidence at length, for the conclusion reached in this behalf was based on the facts. Our examination of the record satisfies us that the learned trial judge was right in concluding that:

"* * * The arrangement for giving a real estate mortgage was too vague and uncertain. I think it amounted only to a promise that a real estate mortgage would be given, if, after a little, no other way out of the difficulty could be found, and that in any event it should not be given to any one else."

We concur in the court's further conclusion that, while the bank seems to have given up such rights as it had to keep $1,500 then on deposit to the credit of the bankrupt, it is not clear that any of this sum was applied to old debts rather than to the purchase of other assets which in ultimate effect became subject to rights in the bank substantially equivalent to those released. Furthermore, we think the weight of the evidence shows that the conversation, in which it is claimed that the alleged oral agreement was made, took place between and in the presence alone of the secretary of the bankrupt corporation and the president of the bank. The secretary was without authority to bind his company to such a promise, and the president of the bank was also a director of the bankrupt corporation and knew the extent of the secretary's authority. The mortgage cannot be said to have been a ratification of anything said by the secretary in September, because it does not appear that the directors or stockholders had knowledge of the alleged oral agreement. We are not called upon then to consider the validity of the mortgage of April 10th as if it bore date and was delivered September 15, 1905; nor the other interesting questions that would result.

[1, 2] We come next to the issue concerning the insurance proceeds. It is contended by the bank that the insurance was taken at its instance and solely for its protection; that it paid the premium, received the proceeds from the insurance company, and should be decreed to have a valid title thereto as against the trustee. At the time the policy of insurance was issued, the secretary of the bankrupt company was also agent of the insurance company. After testifying that the president of the bank at the time he got the mortgage made application for insurance, the agent continued:

"He wanted me to write a policy direct to the bank, and I told him I couldn't do it. Q. What further was said? A. I told him I would write it in the name of the company and attach a mortgage clause with a full contribution which would cover their interest just the same, and at that time he didn't seem to think that would do. * * * He said it wouldn't do; he wanted it to run straight to the Brown City Savings Bank."

The president of the bank, after testifying that he applied for insurance directly to the bank, stated:

"He wrote the policy and brought it over to me, and, on examining it, I found he had it running to the Maple Valley Canning Company, and I says:

'Mr. Dafoe, that is not what I want at all. I want the policy to the Brown City Savings Bank.' And he said it didn't make any difference, that he couldn't write it that way, and I had faith in him all right enough and I paid him for the policy."

Mr. Dafoe further testified:

"Q. Did the Maple Valley Canning Company at any time solicit from you as an agent, or did you solicit insurance for the Maple Valley Canning Company after the mortgage was given? A. Yes, we attempted to get insurance. Q. After the mortgage was given? A. Yes, sir. Q. Were you able to get any? A. No, sir. Q. Then the only insurance that was written after the mortgage was given was this policy upon the solicitation of the Brown City Savings Bank? A. Yes, sir. Q. And the premium was paid by the Brown City Savings Bank? A. Yes, sir."

Comparison of the sum received by the bank from the insurance company with the amount credited on the mortgage note indicates that the bank deducted from the insurance proceeds the amount of the premium it had paid; and we do not understand this to be denied. It is sometimes material whether the mortgagor or the mortgagee is to pay the premium (Pendleton v. Elliott, 67 Mich. 498, 35 N. W. 97); and the fact in the present case that the bank so reimbursed itself is of some importance as a test of whether the purpose really was to obtain insurance solely in the interest of the bank. Further, the mortgage contains this clause:

"The said mortgagor will also keep all buildings erected and to be erected upon said lands insured against loss and damage by fire, with insurers, and to an amount, approved by the mortgagee as a further security to said mortgage debt, and assign and deliver to the said mortgagee all insurance upon said property."

The mortgage also provided that, on default of the mortgagor to procure and maintain insurance, the mortgagee might effect such insurance and the sum paid therefor should be a further lien on the premises payable at once with interest at 7 per cent., and upon failure for 30 days to repay such insurance premium, the principal sum should at the option of the mortgagee become forthwith payable.

The policy in terms insured the canning company for one year from the 10th of May, 1906, to an amount not exceeding $2,000; and provided that if, with the consent of the canning company, an interest under the policy should exist in favor of a mortgagee, the conditions of the policy should apply in the manner written upon or attached to the policy. There was attached to the policy a clause which appears in the margin.[1] It will be observed that this clause made any loss pay-

[1] "Michigan Standard Policy, Mortgagee Clause with full contribution.

"Loss or damage, if any, under this policy, shall be payable to Brown City Savings Bank, as first mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy: Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

"Provided, also, that the mortgagee (or trustee) shall notify this company

able to the Brown City Savings Bank "as first mortgagee * * * as interest may appear," and further that the insurance as to the interest of the mortgagee should not be invalidated by any act or neglect of the mortgagor, etc. It is well to bear in mind the provisions that the mortgagor was *expressly* insured for $2,000, with loss payable to the mortgagee as its *"interest may appear,"* and at the same time to consider whether the mortgagor would not have been entitled to receive the insurance proceeds if prior to the loss it had paid the mortgage debt. At the time this mortgage was given and the insurance applied for, it could not, of course, be known what amount, if any, as proceeds of insurance would accrue, and so far as disclosed the value of the property as a going concern exceeded the amount of the insurance obtained, as also the amount of the bank's nominal interest under the mortgage; even as dead property its value was perhaps as much as the insurance; its cost was much more. It is objected that parol evidence is not admissible to vary the written policy (Lynchburg Fire Ins. Co. v. West, 76 Va. 575, 578, 44 Am. Rep. 177, and cases there cited); but waiving this, and looking at the evidence as a whole, we are not satisfied that the contract was not the one written. It is insisted that, if the contract be considered in its written form, the effect of the clause attached was to insure the interest of the mortgagee solely, and that the insurance was not an incident to the property insured, but was a special agreement to protect the mortgagee against its loss. On the other hand, it is urged that this did not change the primary contract to insure the mortgagor's interest so long as it did not violate any condition of the policy, and so did not forfeit its right under it. Language may be found in decisions treating of the rights of mortgagees under policies containing clauses similar to the present

of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This company reserves the right to cancel this policy at any time, as provided by its terms, but in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notic to the mortgagee (or trustee) of such cancellation, and shall then cease, and this company shall have the right, on like notice, to cancel this agreement.

"In case of any other insurance upon the within described property, this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee or otherwise.

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payments shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of its claim."

one, which regards the policies as operating to insure the mortgagors and mortgagees separately, and to give the mortgagees the same benefit as if they had taken out separate policies. However, we think there are but few decisions, which, when applied to their facts, go further than to protect the mortgagee against the mortgagor's violations of conditions of the policy; otherwise stated, the apparent object of the clause is to enable the mortgagee not in fault to recover, when a mortgagor in fault cannot recover, against the insurance company. Thus two distinct contracts are involved, one to indemnify the mortgagor, and the other the mortgagee. But the contract of the mortgagee may in a practical sense be said to be dormant while the mortgagor keeps the conditions of the policy, and to become active when he fails to keep them. The bank rests its claims in this respect on Hastings v. Westchester Fire Ins. Co., 73 N. Y. 141, 154; City Five Cent Savings Bank v. Penn. Ins. Co., 122 Mass. 165, 167; Syndicate Ins. Co. v. Bohn, 65 Fed. 165, 168, 12 C. C. A. 531, 27 L. R. A. 614 (C. C. A. 8th Cir.); and other kindred decisions.[2]

Decisions of this class, as we understand them, are correctly interpreted in Smith v. Union Ins. Co., 25 R. I. 260, 265, 266, 55 Atl. 715, 717 (105 Am. St. Rep. 882), in which a mortgagee brought suit to recover upon three policies of insurance in the standard form, each containing a clause similar to the one in question here. Judge Douglas said:

"Now all the elements of such a contract appear in this new form. Taken together with the rest of the policy, the company insure first Thomas Cullam (mortgagor) for any loss which may come to him by reason of the destruction of the property described. This contract is subject to certain conditions appropriate to the relation of owner to the insurer. So long as this relation exists and these conditions are performed, the contract with Cullam is in force. If loss occurs while it is in force, it is paid, by direction of the mortgage clause, to Smith to the amount of his mortgage, and the balance, if any, to Cullam; the amount paid to Smith extinguishes his mortgage debt fully or pro tanto. All this would have taken place under the old form of clause, and, when the conditions are as supposed, the new parts of the clause have no application. When Cullam parts with or loses his interest, fails to pay premiums, or violates the conditions of the policy, the new provisions become effectual. These deal with the interest of the mortgagee. 'This insurance *as to the interest of the mortgagee only therein* shall not be invalidated by any act or neglect of the mortgagor or owner,' etc., is the language which meets the new condition of affairs; and the closing paragraph conclusively shows that the subsisting agreement which springs into life when the contract with the owner dies is the familiar one of insurance of a mortgagee's interest—an indemnity for loss of the security—in which the owner has no part and from which he can claim no benefit. The contract thenceforth is between the insurer and the mortgagee only, and the relation of the original

---

[2] That is, decisions like Hanover Fire Ins. Co. v. Bohn, 48 Neb. 743, 747, 67 N. W. 774, 58 Am. St. Rep. 719; Pioneer, etc., Loan Co. v. Providence, etc., Co., 17 Wash. 175, 176, 49 Pac. 231, 38 L. R. A. 397; Magoun v. Fireman's Fund Ins. Co., 86 Minn. 486, 490, 91 N. W. 5, 91 Am. St. Rep. 370; Phenix Ins. Co. v. Omaha Loan & Trust Co., 41 Neb. 834, 60 N. W. 133, 25 L. R. A. 679, and note; Westchester Fire Ins. Co. v. Coverdale, 48 Kan. 446, 29 Pac. 682; Hartford Fire Ins. Co. v. Olcott, 97 Ill. 439, 453; Meriden Savings Bank v. Home Ins. Co., 50 Conn. 396, 399; Reed v. Fireman's Ins. Co. (N. J.) 80 Atl. 462, 465, 35 L. R. A. (N. S.) 343; Cooley's Briefs on Law of Ins. pp. 777-8.

insured to the property, and his acts or neglect concerning it, are of no account. And the two contracts combined in the policy and the mortgage clause are separable and independent from the beginning. When the first fails, or if it never attaches, the second begins and proceeds subject to its *own conditions and limitations. This construction has been adopted by all the courts whose decisions on the subject have been brought to our attention.*"

It is to be observed that in the instant case the bankrupt did not violate any condition of the policy of insurance, and so was not in any respect in default upon the contract between it and the insurance company. True, as between the bankrupt and the bank, the bankrupt should have paid the premium in the first instance; but this did not concern the insurance company and did not impair its contract with the bankrupt. It is plainly deducible from the decisions cited that, where the mortgage debt is less than the recoverable insurance proceeds, the mortgagor (not in default), as well as the mortgagee, has an interest in such proceeds as certainly as he has in the property itself. We are not unmindful of Mr. Dafoe's statement that the bankrupt could not obtain separate insurance after the mortgage was given. The reason for this is not stated, and the fact does not seem decisive of the meaning that should be given to the policy that was admittedly written and accepted. If upon any hypothesis we may regard the contract of insurance as intended to vest in the owner any title to or interest in the proceeds of insurance in case of loss, it is reasonably plain that the right of the trustee is not to be tested alone by the general rule that insurance does not attach to the realty as an incident and the proceeds do not stand in its place. If it was not so intended by the contract—if in truth the parties were conscious that the mortgage would not stand the test of the bankruptcy act and were seeking to place possible insurance proceeds beyond the reach of that act—it is not easy, under the facts of this case, to perceive how the class of decisions before alluded to aids them. No such question was there involved or decided.

Another theory urged is that the mortgage at most was only voidable at the instance of creditors or their representative, the trustee; and since the mortgagee had an insurable interest, and the proceeds are not the same thing as the property and are less than the mortgage debt, no one has any interest in them except the bank. To support this contention reliance is placed on a class of decisions which pass upon rights of insured grantees of property under conveyances either void or voidable at the instance of the grantors' creditors, where the insurance policies were taken *in the names* of such grantees or their trustees, and it was held that the insurance proceeds were the individual property of the grantees and not recoverable by creditors of the grantors. For example, Lerow v. Wilmarth & Trustee, 9 Allen (Mass.) 382, is relied on and may be referred to as illustrative of counsels' argument. There a solvent husband conveyed real estate to a trustee for the benefit of the grantor's wife and children. Two years later the grantor gave his daughter some household furniture and insured it in his own name as trustee "for the benefit of whom it might concern," and it was subsequently destroyed by fire. It did not appear that he had any intention to delay or defraud creditors

by these gifts. Two years after effecting such insurance, he obtained a discharge in insolvency from all his debts due in July, 1857; but the plaintiff's claim was subsequently revived by a new promise. Suit on the claim so revived to subject the proceeds of insurance to its payment failed. Holding that the insurance money did not belong to the donor in his own right, and answering a contention that the transfer was a voluntary conveyance and fraudulent and void as to creditors to whom he was at its date indebted, Bigelow, C. J., said (at page 385 of 9 Allen):

"Be it so. This does not in our view at all change the rights of the parties to the funds in the hands of the supposed trustee. If the conveyance was void as to the creditors of the defendant, it was nevertheless perfectly good and valid inter partes. The title passed to the daughter, and she held the property by an unimpeachable right, as against all the world except the creditors of her father. It was only in the contingency that he might at some future day become insolvent that she was liable to be disturbed in her possession and use of the property which he had conveyed to her. But this contingency in no way affected her right to obtain insurance on the property in her own name, and for her own benefit. Her insurable interest was perfect and complete. The rights of creditors were not interfered with or impaired by the insurance effected on the property for her benefit. It was a valid contract, which she had a right to make, and the benefit which accrued to her from it cannot be defeated by third persons on the ground that she held the property by title which in a certain contingency might be defeasible. It cannot be said that the money received on the policy stands in the place of the property destroyed. It is in no proper or just sense the proceeds of the property. It is a sum paid by the insurer in consideration of a certain premium, as an indemnity for the loss of property in which the person insured has a legal and insurable interest. This indemnity cannot be taken away by setting up a contingent right or title in third persons in the property, in which the insured had a valid insurable interest at the time of the loss. If therefore the plaintiff could maintain the position that the transfer of the personal property to the daughter was void as to creditors, he would still fail to show a want of a valid insurable interest in her, or any right to hold the money in the hands of the supposed trustee."

Similarly, in Nippes' Appeal, 75 Pa. 472, in a case kindred in principle, though a longer time had intervened between the date of the voluntary conveyance (which the husband had made to his wife) and the commencement of the suit, Judge Sharswood reached a like result. Further cases of this class cited are Bernheim & Co. v. C. & P. Beer et al., 56 Miss. 149, Forrester v. Gill, 11 Colo. App. 410, 53 Pac. 230, and notes to section 19, 1 Moore on Fraudulent Conveyances, p. 118. The facts of some of those cases show insolvency of the grantors and a purpose to defraud creditors at the times of conveyance and insurance. McLean v. Hess et al., 106 Ind. 555, 7 N. E. 567; St. Paul Ins. Co. v. Brunswick Co., 113 Ga. 786, 39 S. E. 483.

The decisive question is whether the principles of either class of the decisions relied on govern a case like this. We have found that the mortgage was given and received in violation of the bankruptcy law. We have seen that the mortgagee made application for insurance at the time the mortgage was executed, and that the negotiations in that behalf were conducted by the president of the bank and the secretary and manager of the bankrupt corporation—then also the insurance agent. We have pointed out that the policy of insurance

(so far as its provisions need repetition) actually given and received ran to the mortgagor, with loss if any payable to the bank as first mortgagee as its interest might appear. If we are right in our conception of the purpose of the mortgage clause, it at last amounts in this case to nothing more than an appointment of the mortgagee to the loss as far as its interest might appear. This results from the fact, as stated, that the mortgagor was in no respect in default under the policy at the time the loss occurred. It does not matter what the rights of the mortgagee would have been, if the mortgagor had violated any of the conditions of the policy. Nor can it signify that the form of the policy was such that, in case the mortgagor had brought suit upon it to recover the loss, the mortgagee could (aside from the question we are discussing) have required the proceeds of recovery to be applied to its debt; for that would have been true under the old form of appointment. The feature of importance is whether the mortgagor had such an interest in the policy that it could, as is stated in the opinion of the learned trial judge, in every circumstance have maintained suit upon it. We are constrained to believe that it could.

Now, more particularly as to the second class of cases relied on and in which the policies were issued in the names alone (or of the trustees) of the persons claiming the insurance proceeds, it is clear in each instance that there was but one insurance contract, and that it was made directly and exclusively between the insured and insurer. There is a manifest distinction between that class of contracts and the one now in dispute. Indeed, the very insistence that the mortgage clause in this case must be treated as though the insurance was taken in the name alone of the mortgagee amounts to a concession that the the bank's title to the proceeds is dependent upon such a construction of the present contract. It is to be observed further that the preference mortgage was made when the mortgagor was obviously insolvent and to secure past indebtedness. This is no less true respecting the insurance contract and the proceeds of loss derived in virtue of it. Just as certainly as the mortgagor so insured the property and so observed the conditions of the insurance contract as, under any state of fact, to retain an interest in the insurance, just that certainly are both parties open to the charge that a preference was intended as to the insurance precisely the same as was designed in respect of the mortgage. This intent is not avoided by the circumstance either that the insurance was not greater than the debt or that the fire did not happen to destroy enough property to exceed the debt. Plainly, if the mortgagor had paid the debt before the loss occurred, it would have been entitled to the proceeds. Smith v. Union Ins. Co., supra. It will not do therefore simply to assert that the proceeds belong to the mortgagee, nor that the creditors can lose nothing if title be declared to be in the bank. So also of the contention that the mortgagee had an insurable interest, subject only to the chance of the creditors taking steps to have the mortgage vacated. The answer is not that the bank had no insurable interest. It is that it did not insure that interest for its exclusive benefit and protection, and the

insurance transaction we think may safely be said to have been part of the mortgage scheme of preference; the far-reaching consequences of a contrary holding are apparent.

Strangely enough the question we are endeavoring to solve does not appear to have arisen under any of the bankruptcy acts; at least, no case directly in point has been cited, and we have not discovered any. The nearest approach that we have found appears in Hanson v. Blake & Co. (D. C.) 155 Fed. 342. The bankrupt, Hicks, had assigned to his wife a claim against an insurance company. She testified that the assignment of the policy was made to protect her from loss for money which she had loaned her husband, and that her husband thought she ought to be secured. Judge Hale said of this (page 360 of 155 Fed.):

"It is unquestioned, however, that this assignment was to secure a prior existing indebtedness. The assignment was made on August 25, 1903. Hicks' petition in bankruptcy was filed in this court December 2, 1903. The assignment was clearly a preference, and was in violation of sections 60a and 60b of the amended bankruptcy act of February 5, 1903. * * * Mrs. Hicks had no legal claim. She has no equitable lien upon any fund now before the court."

The court found that several creditors who had advanced moneys on the faith of promises of security were entitled to equitable liens, but the basis of each of those allowances was a present loan. The doctrine of equitable lien as respects a mortgagee in whose favor a covenant to insure mortgaged premises for the better security of the mortgagee was stated by Justice Bradley in Wheeler v. Insurance Co., 101 U. S. 442, 25 L. Ed. 1055; but it is not helpful to the bank in the present case. So of the decision In re West Norfolk Lumber Co. (D. C.) 112 Fed. 759; for there the insurance seems to have been obtained simultaneously with the advancement of loans by a bank, and the effort to subject the insurance proceeds to the payment of creditors failed for that reason.

The case of Palmer v. Smith, 126 Mich. 352, 85 N. W. 870, may have involved the present question, though this is not certain. Palmer, as trustee in bankruptcy of Wright D. Smith, brought the action against Smith's wife to reach property alleged to have been conveyed in fraud of creditors. The bankrupt had conveyed to his wife the steam barge Germania for a nominal consideration, and she testified that she never paid anything for the transfer. The barge was insured, presumably in her name, though this does not appear. The barge burned, and she collected the insurance money and purchased the barge Porter Chamberlain, and owned a three-quarters interest at the time of the suit (354). The trustee recovered below, and the judgment was affirmed. According to the claim of the bank in the present case, the insurance proceeds derived from the loss of the Germania belonged to Mrs. Smith, and it is hard to discern why on that hypothesis the Porter Chamberlain did not also belong to her; but that was not the decision.

There remains an incidental question. The bank's nominal interest under the mortgage was $2,843.22. By its answer it surrendered and waived its claim of security under the mortgage to the extent of $765.-

48, leaving a balance of $2,077.85. Deducting the sum received from the insurance and credited on the mortgage debt, a balance of $880.55 remains; and it is averred that this sum is covered by the mortgage, is a present lien, and should be so decreed. It scarcely need be stated that this claim falls with the mortgage, and the bank's right in respect of it is at most only that of a general creditor.

While the case is not free from difficulty, yet, in view of its facts and circumstances, we are disposed to concur in the ruling below that the proceeds of insurance "were and are a substitute for such invalid mortgage," and to hold that the judgment should be affirmed, with costs.