Argued March 30, affirmed April 13, 1915.

# MARKWART v. KLIEWER.

(147 Pac. 553.)

**Reformation of Instruments—Grounds—Mistake and Fraud.**

1. Where an instrument does not express the intent of the parties owing to mistake on one side and fraud, bad faith or inequitable conduct on the other or by one who was intrusted with having the contract reduced to writing, the instrument may be reformed.

**Reformation of Instruments—Sufficiency of Evidence—Fraud.**

2. Evidence in a grantor's action for the reformation of a deed left with the grantee to insert the name of his wife, as a grantee, *held*, to show that the second deed, on the suggestion of the grantee and without any mention thereof to the grantor, left certain street liens out of the exceptions from the warranty, in fraud of the grantor.

[As to reformation of instruments on the ground of mistake, see notes in 30 Am. St. Rep. 621; 117 Am. St. Rep. 227.]

From Multnomah: HENRY E. McGINN, Judge.

Department 2.    Statement by MR. JUSTICE EAKIN.

This is a suit by Rudolph Markwart and Ella Markwart, his wife, against D. M. Kliewer and Mary Kliewer, his wife, to reform a deed.        AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. L. C. Mackay.*

For respondents there was a brief over the names of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. Arthur L. Veazie.*

MR. JUSTICE EAKIN delivered the opinion of the court

This is a suit to reform a deed. The defendant Kliewer's testimony is disputed by many other witnesses, and it is difficult to arrive at the facts. He bought the property from plaintiffs for the sum of $4,100, and at the time 'of the agreement the contract

was reduced to writing in the form of an escrow, to be deposited in the bank until payment of the purchase price should have been made. The deed was delivered, and afterward the defendant Kliewer discovered that it was made in his favor, and when he showed it to his wife she desired her name to be inserted in it as grantee also. There was a mistake in the spelling of the name of Markwart's wife in the original deed. At the request of Kliewer he promised to execute a new deed, and they went together into the office of King, a conveyancer. Markwart handed the old deed to King, with instructions to make such corrections as to the names as Kliewer should dictate and desire, but that the deed was to be a literal copy of the old one in other respects; and thereupon Markwart went out to attend to other business, leaving Kliewer to make the alterations. King says that Kliewer sat down by him and pointed out the changes he wished made in the deed and noted them to him, which he marked as directed by Kliewer. Among the changes that Kliewer insisted upon was the omission of the clause in the old deed of exceptions from the warranty of the street and sewer improvement liens and from the mortgage. This omission from the deed is the whole subject of controversy. Markwart contends that it was omitted without his knowledge or consent, and asks to have the deed reformed to except from the warranty the street liens. Kliewer asserts that he at no time had any knowledge of the street liens upon the property, and did not agree to buy the property subject to those liens. He avers that the street liens were not mentioned to him at the time of making the contract, nor did he have any notice of it at any time. Stroud, the scrivener who drew the escrow, at the time of the signing of the contract, namely, on the 25th day of August, 1911, says that the agreement,

when written out, was not satisfactory to Markwart and Kliewer, and, after some controversy, Stroud interlined the words "and also sewer and street improvements" in the escrow agreement, thus stating that the buyer should assume the sewer and street improvement liens. This escrow, he says, was written in triplicate, and the interlineations occurred exactly the same in each of the three copies; one copy being for Markwart, one for Kliewer, and the third to be deposited in the bank. One copy of this escrow and the deed were delivered to Kliewer the same day or the next day. He also had an abstract of title which it appears contained a designation of these liens. He remained in possession of the escrow deed and the abstract for a period of a month or six weeks, without any objection from him. When he went to Markwart for a new deed his only complaint was that the deed did not contain his wife's name as a grantee, and he wanted that change, and that was the only correction spoken of or suggested in the presence of Markwart. Kliewer contends that he did not understand, talk, or read English, and therefore knew nothing about these things. However, there are several witnesses who testify to the fact of his knowledge of these liens. Majeske, the defendants' witness who negotiated the sale to Kliewer for Markwart, testifies that he told Kliewer particularly in regard to the liens, and offered to sell him the place at $4,500; that Kliewer said the price was too great, when he should assume the payment of the street improvements and the price also, and eventually agreed on $4,100, cutting down the amount on account of the liens. Markwart and his wife both testify to having told defendants in regard to the liens. Also the witness Freler talked with Kliewer, in the course of which conversation Kliewer and his wife said that $4,100 was the

amount paid for the lot, and that Kliewer had to pay
for the street and sewer improvements. At the time
of the writing of the new deed, Kliewer made the only
suggestions in regard to the changes in the deed. Mr.
King, the conveyancer, testifies that Kliewer said he
wanted a change made, and pointed out in the old deed
the portion he desired eliminated, which King then
marked with a pencil, and that the portion he desired
left out was in relation to the street liens, which of it-
self shows Kliewer had knowledge of the liens before-
hand. Notwithstanding the fact that Kliewer claimed
he could not read, write or talk English, the cashier of
the bank and Mr. King testify that he could read, write
and talk English very well, and other witnesses testify
that he read the newspapers and discussed political
news contained therein. The first deed that was de-
livered to Kliewer contained no interlineations, such as
were in the escrow.

1, 2. We are satisfied that the second deed left out
the item in regard to the street liens on the suggestion
of Kliewer, and without any mention thereof being
made to Markwart, and was therefore a fraud upon
plaintiffs. The rule is:

"Where, however, the instrument does not express
the true intent of the parties, owing to mistake on one
side, coupled with fraud or inequitable conduct on the
other, relief will be freely given. The ground of the
jurisdiction in this case is the fraud of the defendant,
rather than the mere mistake of the plaintiff": 6 Pom-
eroy, Equity Jurisprudence, § 676.

"When one party to a contract intrusts to and de-
pends upon the other party to have the contract, as
made by them, reduced to writing, the party intrusted
with such duty must act with the utmost good faith":
*Archer* v. *California Lumber Co.* 24 Or. 341 (33 Pac.
526).

The decree of the Circuit Court, reforming the instrument, is fully justified by the evidence.

The decree is affirmed.                              AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR JUSTICE HARRIS concur.