## CONNECTICUT FIRE INS. CO. v. OAKLEY IMPROVED BUILDING & LOAN CO.
### et al.
### No. 6805.

Circuit Court of Appeals, Sixth Circuit.
Jan. 13, 1936.

J. L. Kohl, of Cincinnati, Ohio (Harmon, Colston, Goldsmith & Hoadly, of Cincinnati, Ohio, on the brief), for appellant.

Frank E. Wood, of Cincinnati, Ohio (Nichols, Morrill, Wood, Marx & Ginter and Clifford F. Cordes, all of Cincinnati, Ohio, on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

The question here is, whether appellee the Oakley Improved Building & Loan Company (hereinafter called the Oakley Company) is entitled to reformation of a fire insurance policy. The claim is grounded upon the following facts:

Josie Ramsey owned a house and lot upon which the Southern Ohio Loan Company (herein called the Southern Company) held a mortgage for $4,500. The house was insured against fire in appellant, the Connecticut Fire Insurance Company, to the amount of the mortgage. A printed mortgage clause was attached to the policy making loss payable to the Southern Company as mortgagee.

The policy expired on March 24, 1928, and on March 22 Mrs. Ramsey wrote Spragens, appellant's agent, as follows: "Kindly renew policy for insurance and send to Southern Ohio Loan Company. Kindly mail me bill for same and I will

mail you check. Trusting you will take care of this immediately as it will expire Saturday. * * * "

Along with this letter she sent a notice and a form of mortgage clause which she had received from the Southern Company similar to the one attached to the expiring policy. The notice read: "We enclose mortgage clause to be used by the agent in writing the new insurance."

The renewal policy was issued by Spragens and carried the form supplied by the Southern Company. This form was printed on yellow paper, bore the name "The Southern Ohio Loan Company" in large letters at the top, and had blanks at the bottom for the date of execution, the number of the policy to which it was to be attached, the name of the company issuing it, and a space for the name of the agent executing it. When the blanks were filled it showed that it was dated March 28, 1928, was signed by Spragens, and attached to renewal policy No. 46967 of appellant. It contained, among others, the following clause: " * * * damage if any under this policy shall be payable to the Southern Ohio Loan Co., mortgagee, as its interest may appear, and *this insurance* as to the interest of the mortgagee only therein, *shall not be invalidated* by any act or neglect of the mortgagor or owner of the within described property nor *by any foreclosure* or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property. * * * " (Italics ours.)

The policy itself aside from the mortgage clause form provided: "This entire policy *unless otherwise provided by agreement indorsed hereon or added hereto,* shall be void * * * if the interest of the insured be other than unconditional and sole ownership * * * or if, with the knowledge of the insured, foreclosure proceedings be commenced. * * * " And again: "If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation, having an interest in the subject of the insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest, *as shall be written upon, attached, or appended hereto.*" (Italics ours.)

Some time after this renewal a refinancing of the loan on the Ramsey property took place under which the Southern Company was paid off and appellee the Oakley Company became the mortgagee. The new mortgage was for $4,500, and the attorney for appellee used its proceeds to pay off the old one and received from the Southern Company the old mortgage and the insurance policy. When the Southern Company delivered the policy to the attorney, it stamped this sentence upon the mortgage clause: "The interest of the Southern Ohio Loan Company in the within policy has been satisfied."

On June 15, 1928, Cordes, attorney for appellee, mailed the policy received by him from the Southern Company, which then had nine months to run before expiration, to Spragens with a letter reading: "Attach mortgage clauses to The Oakley Improved Building and Loan Company on the enclosed policies. When this is done please return to me." The other policy referred to is not involved here.

There was some dispute whether, when Spragens received the letter and policy, the Southern Company mortgage clause had been detached. Cordes testified that it had not. The court found in accordance with his testimony and there appears to be no substantial reason for thinking otherwise.

Upon receipt of the policy and letter Spragens attached to the policy, No. 46967, a new mortgage clause styled: "Uniform Standard—Form No. 127—National Board Standard Mortgage Clause. * * * " This new clause contained the following provisions:

"This policy, as to the interest therein of said payee, as mortgagee * * * only, *shall not be invalidated* by any act or neglect of the mortgagor or owner of the within described property nor *by the commencement of foreclosure proceedings,* nor the giving of notice of sale relating to the property, nor by any change in the interest, title, or possession of the property, * * * and provided *further that the mortgagee * * * shall notify this Company of the commencement of foreclosure proceedings* and of any notice of sale relating to the property, and of any change of ownership. * * * "

"Failure upon the part of the mortgagee * * * *to comply with any of the foregoing obligations shall render the insurance under this policy null and void* as

to the interest of the mortgagee. * * *" (Italics ours.)

Spragens then returned the policy to Cordes in an envelope, by mail, without an accompanying letter.

The old mortgage clause had been detached from the policy before it was returned to Cordes. Spragens notified his home office of the substitution of the new mortgage clause for the old one but did not advise either Mrs. Ramsey or any agent or attorney of appellee of the change. Upon receipt of the policy with the new mortgage clause attached, Cordes sent it to Woods, secretary of appellant, who, without examination, placed it in appellant's safe.

Some time thereafter Mrs. Ramsey defaulted in her payments on the mortgage and appellee filed suit to foreclose. While this suit was pending the property was destroyed by fire on January 25, 1929. Notice of the fire was given to appellant, which then for the first time informed appellee that the policy was void as to it because it had not notified appellant of the commencement of the foreclosure proceedings as provided by the new mortgage clause. It was to restore the old mortgage clause which did not contain the requirement of notice of foreclosure by the mortgagee, with the name of appellee substituted for the Southern Company, that this suit for reformation was brought. The court decreed that appellee was entitled to reformation and we concur.

▮▮▮ When on March 23, 1928, the policy with the Southern Company mortgage clause attached was delivered, it constituted a contract for insurance between Mrs. Ramsey and appellant and for the same consideration (the premium) embodied a secondary obligation of appellant to the mortgagee. Brown City Savings Bank v. Windsor, 198 F. 28, 33, 41 L.R.A.(N.S.) 1012 (C.C.A.6). By the terms of the mortgage clause a failure on the part of Mrs. Ramsey to give notice of any foreclosure proceedings would not invalidate the interest of the mortgagee. When on June 15, 1928, Cordes, acting not only for the Oakley Company but for Mrs. Ramsey as well, and knowing the provisions of the Southern Company mortgage clause used in previous transactions between Mrs. Ramsey and appellant, forwarded the policy to Spragens with that mortgage clause attached and with the directions above quoted, both he and Mrs. Ramsey had the

right to assume that if appellant returned the policy with another mortgage clause payable to appellee, its provisions and conditions would be similar to those of the old one.

As was said in Eames v. Home Ins. Co., 94 U.S. 621, 629, 24 L.Ed. 298: "This is the sense and reason of the thing, and any contrary requirement should be expressly notified to the party to be affected by it." See, also, Hay v. Star Fire Ins. Co., 77 N.Y. 235, 238, 33 Am.Rep. 607; L. Lewitt & Co., Inc., v. Jewelers' Saf. Fund. Soc., 249 N.Y. 217, 222, 164 N.E. 29; Martin v. American Ins. Co., 198 Wis. 214, 217, 223 N.W. 437; Massachusetts Bonding & Ins. Co. v. R. E. Parsons Elec. Co., 61 F.(2d) 264, 268, 92 A.L.R. 218 (C.C.A. 8). There is nothing in Cordes' letter of June 15, 1928, to indicate that any change in the mortgage clause was desired except the substitution of the name of the new mortgagee for that of the old. Certainly Mrs. Ramsey and appellee did not intend nor expect to receive a lesser degree of protection than Mrs. Ramsey had paid for.

If appellant intended to abrogate the old mortgage clause, which did not invalidate the interest of the mortgagee for failure to give notice of foreclosure, and to substitute contrary conditions and provisions, both law and equity required that the insured have notice thereof. Eames v. Home Ins. Co., supra; Hay v. Star Fire Ins. Co., supra. The change was highly important, was advantageous to appellant and correspondingly disadvantageous to the insured, and if permitted to stand was equivalent to a new contract which appellee was mistakingly induced to accept by the inequitable conduct of appellant. Under such circumstances equity will not be slow to grant reformation. Its jurisdiction to reform written instruments where there is a mistake on one side and inequitable conduct on the other is undoubted. Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 435, 12 S.Ct. 239, 35 L.Ed. 1063; Pomeroy's Eq. Jurisprudence (4th Ed.) Vol. 2, § 870.

In Page on Contracts (2d Ed.) vol. 4, § 2218, it is said: "Where A is entering into a written contract under mistake as to its contents, and the circumstances are such that if B, too, were mistaken, reformation would be given on A's application, a still clearer case for reformation exists where B knew of A's mistake and took advantage of it, or by his own conduct or

representations led him into such a mistake." See, also, Roszell v. Roszell, 109 Ind. 354, 356, 10 N.E. 114; Markwart v. Kliewer, 75 Or. 574, 577, 147 P. 553; Crookston Imp. Co. v. Marshall, 57 Minn. 333, 337, 59 N.W. 294, 47 Am.St.Rep. 612; Winans v. Huyck, 71 Iowa, 459, 32 N.W. 422; Mercer v. Jenkins, 201 Iowa, 423, 427, 205 N.W. 772; Betz v. Swanson, 200 Iowa, 824, 829, 205 N.W. 507; Moody v. Smoot Adv. Co., 98 W.Va. 261, 268, 126 S.E. 919; Scott v. Spurr, 169 Ky. 575, 579, 184 S.W. 866.

■ Appellant argued that appellee is estopped from seeking reformation because it neglected to familiarize itself with the contents of the new mortgage clause, but it is not universally true that equity will withhold relief because the injured party has failed to read the instrument complained of. The law required of appellee but reasonable diligence under the circumstances. Sanders v. Monroe, 56 App.D.C. 132, 10 F.(2d) 997, 999; Betz v. Swanson, supra; Sutton v. Risser, 104 Iowa, 631, 637, 74 N. W. 23. Mrs. Ramsey herself never saw the new mortgage clause. As above indicated, she had a right to assume that it was identical with the old save for the substituted mortgagee and appellee might reasonably indulge in the same assumption because it knew that the old mortgage clause had been used between the parties. The case is not one where the insured failed to read an original policy.

Decree affirmed.