L. LEWITT & CO., INC., Respondent, *v*. THE JEWELERS' SAFETY FUND SOCIETY, Appellant.

First Department, November 4, 1927.

Insurance — jewelry salesmen insurance — action to reform policy and for damages for loss — mutual mistake not shown — mistake, if any, was that of plaintiff only — policy will not be reformed.

The plaintiff is not entitled to a judgment decreeing a reformation of a contract of jewelry salesmen insurance and for damages for loss of jewelry in possession of a salesman. It appears that the defendant issued a blanket insurance policy to the plaintiff covering the amounts set opposite the names of specified salesmen; that from time to time the amounts and names were changed; that about one month before the expiration of the policy it covered two salesmen for specified amounts; that the plaintiff asked for a renewal of the policy covering the two salesmen then insured, but thereafter changed the original policy to include a third salesman. The new policy was issued to cover two salesmen for the specified amounts and after its issuance a loss was suffered by the plaintiff as to property in the possession of the new salesman who was not covered in the new policy.

Under the circumstances, there was not a mutual mistake of fact, nor was the defendant required under the notification of the plaintiff to issue a policy covering the three salesmen. The policy issued was in conformity with the request of the plaintiff. If there was any mistake at all, it was on the part of the plaintiff in failing to correct its demand for a renewal so as to include a third salesman, and in failing to observe that the policy issued did not cover the new salesman. Therefore, the plaintiff is not entitled to a reformation of the policy.

APPEAL by the defendant, The Jewelers' Safety Fund Society, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of October, 1926, upon the decision of the court rendered after a trial at the New York Special Term.

*Lemuel Skidmore* of counsel [*Putney, Twombly & Putney,* attorneys], for the appellant.

*Donald Marks* of counsel [*Seligsberg & Lewis,* attorneys], for the respondent.

*Lemuel Skidmore* of counsel [*Clarence C. Fowler,* attorney], for the Superintendent of Insurance, as liquidator of The Jewelers' Safety Fund Society.

First Department, November, 1927.                    [Vol. 221·

FINCH, J.   The defendant appeals from a judgment decreeing reformation of a contract of insurance and, as reformed, for damages thereon.   The judgment cannot be sustained · for the reasons hereinafter stated.

The facts, in so far as necessary to indicate the reasons for this decision, briefly, are as follows: The defendant is a mutual insurance company incorporated to insure members of the jewelry trade. The plaintiff manufactures and sells jewelry and is a member of the defendant society.   In the conduct of its business the plaintiff sent salesmen out on the road with stocks of jewelry.   This jewelry the plaintiff would insure with the defendant while in the custody of its salesmen by procuring a policy containing the names of its salesmen and the amount for which each particular salesman was insured.   In the event the plaintiff desired to change the amount of property for which a salesman was insured, or change the salesmen covered, the plaintiff would request the defendant to increase or decrease the amount accordingly or to transfer the insurance from one salesman to another.   On May 1, 1924, the plaintiff obtained from the defendant a policy insuring merchandise in the custody of certain of its salesmen in the amounts set 'opposite their names as follows: "William G. Grimes $25,000; Albert Strauss $5,000; Jack Lewitt $20,000," a total of $50,000.   During the course of the period for which the policy was issued it was changed from time to time.   On April 1, 1925, a month before the policy by its terms expired, the policy covered merchandise in the possession of only two salesmen, namely, William G. Grimes and Jack Lewitt, in the sum of $25,000 each.   On April 13, 1925, the plaintiff requested the defendant to issue a new policy commencing May 1, 1925, to cover merchandise in the possession of these two last-mentioned salesmen in the sum of $25,000 each. On April 15, 1925, the defendant received from the plaintiff a request so to transfer " our policy of insurance " as to cover merchandise in the custody of three salesmen, in names and amounts as follows: "William   G.   Grimes $25,000; Ernest E. Strauss $15,000; Jack Lewitt $10,000."   On April seventeenth the defendant acknowledged the receipt of plaintiff's application for a renewal policy covering merchandise in the custody of two salesmen amounting to $50,000.   On April twentieth the defendant mailed to the plaintiff a rider to be attached to the then existing policy so as to cover the three salesmen in accordance with the plaintiff's request of April fifteenth.   On May 1, 1925, the defendant, in accordance with the plaintiff's written application, issued a new policy to the plaintiff for one year from its date, covering merchandise in the possession of two salesmen in the sum of $25,000 each, namely,

William G. Grimes and Jack Lewitt. This policy was received and retained by the plaintiff. It appears that the plaintiff had employed Ernest E. Strauss as a salesman at or about the time when the final change in the 1924 policy was requested, and thereafter continued to employ said Strauss. On May 10, 1925, a loss occurred from stock in the custody of Strauss, for which loss the plaintiff sought to hold the defendant liable under the renewal policy, contending that in making the request of April fifteenth to have the policy then in force include the name of Ernest E. Strauss, which request was subsequent to the application for a new policy, it was the intention to have the coverage for the three salesmen not only apply to the old policy until its expiration, but also to apply to the new policy and include merchandise intrusted to said Strauss. Whatever may have been the plaintiff's intention in that respect, certain it is that such intention was not communicated to the defendant. The latter could not do otherwise than carry out the specific instructions of the plaintiff without subjecting itself to liability. The plaintiff had asked of the defendant two specific things: (1) To issue a new policy commencing May first covering two salesmen; (2) to attach a rider to the policy which was expiring May first so that this policy would cover three salesmen. These two requests the defendant carried out to the letter. If the defendant were called upon to speculate concerning the plaintiff's intentions, then it would have been as reasonable for the defendant to have supposed that the plaintiff desired temporary coverage only for goods intrusted to Ernest E. Strauss during the remainder of the month of April, being the balance of the term of the existing policy, and desired the new policy issued in accordance with its request of April thirteenth, namely, to have this policy cover the two salesmen. Let us suppose the converse of the case at bar, to wit, that there had been a $25,000 loss of goods in the possession of Jack Lewitt, for which the plaintiff made claim under the policy as issued in accordance with its directions of April thirteenth. Could the defendant be heard to say that there was error in so issuing the policy, and that it should have been issued in accordance with the request of April fifteenth, which was a distinct and different request, namely, to change merely the policy then expiring so as to cover only $10,000 in the possession of Lewitt? While the defendant might very well have been perfectly willing to issue a new policy to cover the three salesmen, it is obvious that there was no mistake on the part of the defendant, and that it proceeded exactly as instructed and issued the policy for the ensuing year to cover two salesmen, and a rider for what remained of the policy which had half a month to run so as to cover three salesmen. Any

mistake in the matter was solely on the part of the plaintiff in not communicating to the defendant what the plaintiff now alleges was its intention in the matter. There was thus no mutual mistake in transcribing an agreement of the parties so as to warrant the reformation of the contract. Reformation may only be had in the event of mutual mistake in reducing an agreement of the parties to writing, or the case of mistake on one side and fraud on the other. In other words, the parties must have been fully in accord as to the terms of the agreement but, for one of the causes above referred to, failed to express in the writing the true terms of the agreement. The court may reform the contract in accordance with the agreement of the parties, but the court cannot make a new agreement for the parties. As was said by Judge Vann in *Curtis* v. *Albee* (167 N. Y. 360, 364): "An action to reform a written agreement rests upon the theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake, or through mistake on one side and fraud on the other, omitted some provision agreed upon, or inserted one not agreed upon. The object of such an action is to so change the instrument, as written, as to conform it to the agreement, as made, by inserting the provision omitted, or striking out the one inserted by mutual mistake. In the absence of fraud nothing can be put in or taken out by the court, unless it was the intention of both parties that it should go in or be left out when the agreement was written. The sole office of such an action ' is to correct mistakes by writing out the contract according to the actual agreement.' (*Thomas* v. *Harmon*, 122 N. Y. 84, 90.) Equity will not make a new agreement for the parties, nor, under color of reforming one made by them, add a provision which they never agreed upon and did not want when the contract was written, ' although it may afterward appear very expedient or proper that it should have been incorporated.' When the writing expresses the actual agreement it cannot be reformed and a stipulation, not assented to, can never be added. (*Nevius* v. *Dunlap*, 33 N. Y. 676; *Bryce* v. *Lorillard Fire Ins. Co.*, 55 N. Y. 240, 242; *Paine* v. *Jones*, 75 N. Y. 593; *Born* v. *Schrenkeisen*, 110 N. Y. 55; *Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40; *Paine* v. *Upton*, 87 N. Y. 327; *Pitcher* v. *Hennessey*, 48 N. Y. 415; *Many* v. *Beekman Iron Co.*, 9 Paige, 188, 195; *Snell* v. *Ins. Co.*, 98 U. S. 85; Story's Equity Jur., § 468; Pomeroy's Eq. Jur., §§ 855, 870, 1376.) The remedy of reformation for mistake should not be confounded with that of rescission for fraud. No fraud is claimed in this action, and the mere fact that an instrument ' ought not to be enforced is insufficient, standing alone, to justify a resort to equity.' (Beach on Eq. Jur., §§ 540,

552.) ' Mistake,' said Mr. Pollock, ' does not of itself affect the validity of contracts at all. But mistake may be such as to prevent any real agreement from being formed, in which case the agreement is void; or mistake may occur in the expression of a real agreement, in which case, subject to rules of evidence, the mistake can be rectified.' (Pollock on Contracts, 392.) ' A mistake on one side may be a ground for rescinding a contract, or for refusing to enforce its specific provisions, but it cannot be a ground for altering its terms.' (Adams Equity, 171.) "

Also in *Metzger* v. *Ætna Insurance Co.* (227 N. Y. 411, 417) Judge COLLIN, writing for the court, said: " While in equity a rescission of a contract may be adjudged on the ground of a unilateral mistake in its contents, in order that a reformation may be adjudged, there must be mutual mistake or inadvertence or the excusable mistake of one party and fraud of the other. There must have been a meeting of the minds of the contracting parties concerning the agreement, or agreements, which the court is asked to declare existent. (*Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40; *Bidwell & Banta* v. *Astor Mutual Ins. Co.*, 16 N. Y. 263; *Bryce* v. *Lorillard Fire Ins. Co.*, 55 N. Y. 240; 21 Halsbury, Laws of England, pp. 16–20.) It is manifest, in virtue of what we have written, there was not a mistake on the part of the insured concerning the terms and conditions of the policy. It is manifest from the evidence there was not a mistake on the part of the insurer. It, by its agent, wrote and delivered the policy. It expressed in it, in language which it could not have misunderstood, the contract it intended and made. The policy as written and delivered must, then, be deemed and taken as the contract of the parties."

In the case at bar there is no claim of fraud and, as noted, there was no mutual mistake. Any mistake by reason whereof the plaintiff did not obtain coverage for goods in possession of its salesman Ernest E. Strauss really occurred, as already noted, through the failure of the plaintiff, *first*, in not communicating what may have been its intention; and, *second*, in not reading the acknowledgment mailed by the defendant on April 17, 1925, wherein it was distinctly stated that the new policy would be issued to cover goods in the possession of but two salesmen, not including Strauss; and, *third*, in failing to examine the policy which was issued and received by the plaintiff prior to the loss in question. In this connection the language of Judge COLLIN in *Metzger* v. *Ætna Insurance Co.* (*supra*) is appropriate: " If the insured obtained or held a mistaken view or belief concerning the agreements of the policy, the fault or negligence of its president and representative was the cause. A mere reading of the policy would have made him and the plaintiff

know the agreements the plaintiff was accepting and entering into. To hold that a contracting party, who, through no deceit or overbearing inducement of the other party, fails to read the contract, may establish and enforce the contract supposed by him, would introduce into the law a dangerous doctrine. Of course, the doctrine does not exist. It has often been held that when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations. He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them and there can be no evidence for the jury as to his understanding of its terms."

It follows that the judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., MERRELL, McAVOY and O'MALLEY, JJ., concur.

Judgment reversed, with costs and complaint dismissed, with costs. Settle order on notice.