L. LEWITT & Co., INC., Appellant, *v.* THE JEWELERS' SAFETY FUND SOCIETY, Respondent.

(Argued October 4, 1928; decided November 20, 1928.)

*W. N. Seligsberg* and *Donald Marks* for appellant. Defendant knew or should have known that Strauss was to be included in the renewed policy. (*Hay* v. *Star Fire*

Ins. Co., 77 N. Y. 235; *Bushey & Sons* v. *American Ins. Co.*, 237 N. Y. 24; *Paskusz* v. *Philadelphia Casualty Co.*, 213 N. Y. 22; *Equitable Ins. Co.* v. *Hearne*, 20 Wall. 494; *Garrison* v. *Farmers Mutual Fire Ins. Co.*, 56 N. J. L. 235; *Browne* v. *City of New York*, 241 N. Y. 96; *Nellis* v. *Western Life Indemnity Co.*, 207 N. Y. 320; *Reynolds* v. *Commerce Fire Ins. Co.*, 47 N. Y. 597.) The argument that the mistake was due to inexcusable neglect on plaintiff's part is untenable. (*Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40; *Hay* v. *Star Fire Ins. Co.*, 77 N. Y. 235; *Fort* v. *Globe & Rutgers Fire Ins. Co.*, 102 Misc. Rep. 584; 186 App. Div. 185; 227 N. Y. 581; *Kilmer* v. *Smith*, 77 N. Y. 226; *Andrews* v. *Gillespie*, 47 N. Y. 487; *Bidwell* v. *Astor Ins. Co.*, 16 N. Y. 263.)

*Lemuel Skidmore* and *Clarence C. Fowler* for respondent. There was no agreement on the part of defendant to issue a policy for the term commencing May 1, 1925, to cover any goods in the custody of Ernest E. Strauss. There was, therefore, no basis for reformation of the policy. (*Curtis* v. *Albee*, 167 N. Y. 360; *Metzger* v. *Ætna Ins. Co.*, 227 N. Y. 411; *Salomon* v. *North British & M. Ins. Co.*, 215 N. Y. 214; *Kenyon Paper Co.* v. *Nederlandsche Lloyds*, 124 App. Div. 886; *Exchange Bakery, Inc.*, v. *Rifkin*, 245 N. Y. 260.) The mistake, if any, on the part of plaintiff was due to inexcusable neglect on its part in failing to read the acknowledgment of its application mailed April seventeenth, and in failing to read the policy. (*Metzger* v. *Ætna Ins. Co.*, 227 N. Y. 411; *154 West 14th Street Company, Inc.*, v. *Schulte, Inc.*, 121 Misc. Rep. 853; 210 App. Div. 851; *Wright* v. *American Equitable Assur. Co.*, 131 Misc. Rep. 215; *Williams* v. *Eldred Refining Co.*, 130 Misc. Rep. 721; *Anderson* v. *Fidelity Co-operative Fire Ins. Co.*, 116 Misc. Rep. 679.) To support a claim for reformation of an insurance policy on the ground of an alleged mutual mistake very clear, positive and convincing evidence of

a mutual mistake must be presented. There is no such evidence in this case. (*Ford* v. *Joyce*, 78 N. Y. 618; *Mead* v. *Westchester Fire Ins. Co.*, 64 N. Y. 453; *Weed* v. *Whitehead*, 1 App. Div. 192; *Voci* v. *Page*, 123 Misc. Rep. 766; *Susquehanna S. S. Co.* v. *Anderson & Co.*, 239 N. Y. 285; *Christopher St. R. Co.* v. *23rd St. R. Co.*, 149 N. Y. 51; *Kues* v. *Foran Foundry & Mfg. Co.*, 191 App. Div. 25; *Fitzgerald* v. *Arcade Theatre Co.*, 153 N. Y. Supp. 618; 172 App. Div. 932.)

KELLOGG, J. The plaintiff, a corporation engaged in the wholesale jewelry business, employed agents to exhibit and sell its jewelry to the retail trade. On May 8th, 1925, the defendant, a corporation engaged in writing burglary insurance, issued to the plaintiff a policy, expiring May 1st, 1926, insuring the plaintiff in the sum of $50,000.00 against loss through theft of any jewelry belonging to it, while the same was without the stores of the plaintiff, in the custody of its salesmen Jack Lewitt and William G. Grimes. On May 10th, 1925, a trunk of jewelry belonging to the plaintiff, in the custody of a salesman of the plaintiff named Ernest E. Strauss, was stolen. The plaintiff thereupon brought this action for a reformation of the policy and for the recovery of its damages sustained through the theft. It asserted that prior to the issuance of the policy an agreement had been entered into between the parties whereby the defendant agreed to insure its merchandise while in the custody of its salesmen Ernest E. Strauss, Jack Lewitt, and William G. Grimes; that through mistake or inadvertence the policy was so drawn that the name of Ernest E. Strauss was omitted. The trial court determined that the plaintiff was entitled to reformation as demanded, and directed judgment for the plaintiff for the damages sustained. The Appellate Division reversed the judgment entered upon the direction, disapproved the findings made by the trial court, made new findings, and directed judgment for the defendant dismissing the complaint.

The plaintiff had for many years maintained with the defendant policies of insurance against theft. On April 10th, 1925, it was the holder of a policy, issued by the defendant, insuring it in the sum of $50,000.00, until May 1st, 1925, against any loss of its jewelry by theft while such jewelry was in the possession of its salesmen Lewitt and Grimes. On or about the date named, the defendant sent to the plaintiff a document, upon the face of which there appeared a notice of renewal, and upon the back of which there appeared a blank form of application for the issuance of a new policy. The notice read as follows: " Your insurance in Class A (Salesmen's Stocks), policy number 45047 for $50,000 expires May 1, 1925, at noon. To renew the above mentioned insurance please fill in the application form on the reverse side and return it promptly to the office of the Secretary-Treasurer so that renewal may be mailed to you before the present policy expires." The plaintiff filled out the blank and returned it to the defendant on April 13th, 1925. The form, as filled out, expressed an application for a policy insuring the plaintiff, from May 1st, 1925, to May 1st, 1926, against the loss by theft of its jewelry while the same was in the custody of Lewitt and Grimes. The application, in expressing the amount of insurance which the plaintiff desired, employed the following words: " Total amount of insurance, $50,000.00. (*Renewed.*) " On April 17th, 1925, the defendant wrote the plaintiff as follows: " Your applications for renewed insurance covering merchandise in the custody of: 2 salesmen or agents, amounting to $50,000.00, registered mail and express in packages amounting to $2,000.00, have been received and accepted and the policies will be issued to date from May 1st, 1925. Also your remittance of $......, accompanying your application, will be placed to your credit and a receipted bill for the amount sent with the policies." Meanwhile, on April 15th, 1925, the plaintiff had written the defendant

requesting that a rider be issued, to amend its policy, so that coverage of its merchandise would be provided for while such merchandise, to the extent of $25,000.00, was in the custody of William G. Grimes; to the extent of $15,000.00, in the custody of Ernest E. Strauss; and to the extent of $10,000.00, in the custody of Jack Lewitt. The plaintiff was entitled, as a matter of right, to have its policy altered, whenever it saw fit, to provide for coverage of goods while in the custody of other or additional salesmen than those named in the policy, provided the sum total of insurance was not increased. Complying with the plaintiff's request, the defendant, on April 20th, 1925, issued a rider to be attached to plaintiff's policy, providing for the coverage of plaintiff's merchandise in the custody of Grimes, Strauss and Lewitt. The old policy having expired on May 1st, 1925, the defendant, on May 8th, 1925, sent to the plaintiff the policy sought herein to be reformed, wherein it insured merchandise of the plaintiff while in the custody of William G. Grimes and Jack Lewitt. The policy omitted the name of Ernest E. Strauss. A clerk of the plaintiff received the new policy through the mail and, without making an examination to learn its terms, placed it in a safe belonging to the plaintiff. Two days later, as already stated, certain jewelry, in the custody of the plaintiff's salesman Ernest E. Strauss, was stolen from the plaintiff, and for the damage sustained by the plaintiff, through such theft, this action was then brought.

" The province of reformation is to make a writing express the bargain which the parties desired to put in writing." (Williston on Contracts, sec. 1549.) " There must have been a meeting of the minds of the contracting parties concerning the agreement, or agreements, which the court is asked to declare existent." (COLLIN, J., in *Metzger* v. *Ætna Ins. Co.*, 227 N. Y. 411, at p. 417.) An agreement for the making and delivery of a policy of insurance, even though resting in spoken words, is a

binding contract of insurance. (*Trustees of First Baptist Church* v. *Brooklyn Fire Ins. Co.*, 19 N. Y. 305; *Commercial Mutual Marine Ins. Co.* v. *Union Mutual Ins. Co.*, 19 How. [U. S.] 318; *International Ferry Co.* v. *American Fidelity Co.*, 207 N. Y. 350; *Struzewski* v. *Farmers' Fire Ins. Co.*, 226 N. Y. 338.) In our case, the defendant notified the plaintiff to make prompt application " to renew " its expiring policy, so that defendant might forward " a renewal " before the expiration date; the plaintiff applied for " Total amount of insurance $50,000.00. (*Renewed.*); " the defendant acknowledged receipt of the application for " renewed insurance," stated that it " accepted " same and would issue a policy to date from May 1st, 1925. There can be no doubt that the plaintiff and the defendant, through these interchanges of written words, had entered into a binding contract for renewal insurance. There can be no doubt that in the interim between May 1st and May 8th, 1925, during which no policy was outstanding, the plaintiff was nevertheless insured by the defendant under conditions and terms which continued the prior policy. Clearly, a policy which renews an old policy must renew the terms of that policy as they stood at the moment of its expiration. "An agreement to *renew* a policy, implies that the terms of the existing policy are to be continued, and this would be so of any instrument, in the absence of evidence, that a change was intended." (*Hay* v. *Star Fire Ins. Co.* 77 N. Y. 235, at p. 239.) In this instance, the terms of the old policy, at the moment of its expiration, provided for a coverage of the plaintiff's merchandise while in the custody of Ernest E. Strauss as well as while in the custody of Jack Lewitt and William G. Grimes. Therefore, the new policy of May 8th, 1925, which provided for coverage only while the merchandise was in the custody of Lewitt and Grimes, incorrectly expressed the contract previously entered into between the parties.

It is immaterial that the agents of the plaintiff, during

the two days elapsing between the receipt of the new policy and the theft, failed to read the policy and to note the error in draftsmanship which had been made. " It has certainly never been announced as the law in this State that the mere omission to read or know the contents of a written instrument should bar any relief by way of a reformation of the instrument on account of mistake or fraud. It is the general rule that where a written instrument fails to conform to the agreement between the parties in consequence of the mutual mistake of the parties however induced, or the mistake of one party and fraud of the other, a court will reform the instrument so as to make it conform to the actual agreement between the parties." (EARL, J., in *Albany City Savings Inst.* v. *Burdick*, 87 N. Y. 40, at p. 46. See, to the same effect, *Bidwell* v. *Astor Mutual Ins. Co.*, 16 N. Y. 263; *Welles* v. *Yates*, 44 N. Y. 525, at p. 531; *First National Bank* v. *Morgan*, 73 N. Y. 593, at p. 594.) " In view of the general rule that the renewal is on the same terms as the original policy, the insured is justified in presuming that the conditions of the renewal will be the same as those of the original policy, in the absence of notice to the contrary. * * * If the conditions are not the same, a reformation of the contract may be had." (Cooley's Briefs on Insurance, vol. 2, p. 1409.)

The case of *Bidwell* v. *Astor Mutual Ins. Co.* (*supra*) is very much in point. There, the plaintiffs had constructed a steamboat for one Crooker. Crooker, in order to secure his indebtedness to the plaintiffs for the work done, executed a mortgage upon the vessel and delivered it to them. The plaintiffs applied to an agent of the defendant for marine insurance upon the vessel in the sum of $7,000. The agent agreed to deliver to the plaintiffs such a policy, with a stipulation to be contained therein permitting a total insurance of $50,000. A policy was subsequently delivered to the plaintiffs, by the defendant, which contained a provision fixing a

limit of $40,000 for total permitted insurance. The policy was received by the plaintiffs and not read by them for more than a year, when the vessel had been lost or destroyed. It then appeared that the terms of the policy had been violated by the taking out of more than $40,000 of insurance. The court granted reformation of the policy, to correspond with the terms of the bargain entered into, notwithstanding the failure of the plaintiffs promptly to make discovery of the terms of the policy, and thereafter to return the policy to the defendant.

We think that the plaintiff was entitled to a reformation of the terms of the policy, and to a judgment as directed by the Special Term.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and O'BRIEN, JJ., concur.

Judgment accordingly.