In the Matter of the Claim of the COMMISSIONER OF TAXATION AND FINANCE on Account of the Death of WILLIAM J. GLEASNER, against GLEASNER COMPRESSED AIR SUPPLY & EQUIPMENT COMPANY, INC., Employer, and CONTINENTAL CASUALTY COMPANY. Appellant.

STATE INDUSTRIAL BOARD, Respondent.*

Third Department, September 11, 1935, *nunc pro tunc* May 8, 1935.

*Gibbons, Pottle & Pottle* [*Frank Gibbons* of counsel], for the appellant.

*John J. Bennett, Jr.,* Attorney-General [*Joseph A. McLaughlin* and *Hector A. Robichon,* Deputy Attorneys-General, of counsel], for the respondent, State Industrial Board.

---

* The decision in this case, handed down May 8, 1935, was amended *nunc pro tunc* on September 11, 1935, as herewith published. (See 244 App. Div. 874; *post,* p. 869.) — [REP.

McNAMEE, J. The corporation employer was engaged in the stone quarry business, and its president was injured in a quarry operation on September 1, 1931, and died as a result thereof on September 9, 1931, leaving his widow as sole dependent. The widow declined compensation. The Industrial Board made an award to the Industrial Commissioner aggregating $1,000 under subdivisions 8 and 9 of section 15 of the Workmen's Compensation Law.

The underlying question here is whether the president was covered by the policy which had been issued by the carrier to the employer. The president was covered by the policy, unless he had elected under the statute not to be covered. (Workmen's Comp. Law, § 54, subd. 6.) There is evidence that the policy as prepared and delivered did not exclude the president from coverage: but the employer, the carrier and the sole dependent contended at the hearings that there was a mutual mistake in not so excluding the executive officers, and offered proof of this mistake, and asked to have the policy reformed to express the meaning and purpose of the parties to the insurance contract. This reformation the Industrial Board denied. Of course, under the statute last above mentioned, if the contract of insurance, as actually entered into by the parties thereto, excluded the president from compensation, the Industrial Board was without jurisdiction.

There is nothing in the record to indicate how this proceeding was begun, or at whose instance, except a letter read into the minutes by the referee, from which it may be inferred that the Board endeavored to induce the widow of the deceased to claim compensation, but she declined to do so on the ground that her husband was not covered by the policy, and, therefore, that she was not entitled to make such claim. It was in these circumstances that the Industrial Board held hearings, made the award complained of, and denied a review. The insurance carrier alone appeals.

At the hearings no witnesses were sworn nor was any proof submitted in behalf of the Industrial Commissioner. The employer and the carrier offered evidence of the facts and circumstances surrounding the making of the agreement and the issue of the policy, as well as of the agreement itself. From this uncontradicted and unimpeached testimony it appears that the employer, because of the mounting cost of compensation insurance, was desirous of reducing its corporate expenses in that particular; that a policy, to bear date January 1, 1931, was directed by the employer to be issued; that this policy was not to cover the executive officers of the employer, but that such officers themselves were to assume the risks of their employment; that this direction and this agreement were understood by the executive officers of the employer and by

the agent of the carrier; that the carrier intended to and did direct its scrivener to prepare a policy providing that the executive officers should be excluded from coverage upon their election, and was told by the scrivener that the policy in question was prepared accordingly; that the carrier intended that there should be executed and attached to the policy the two riders (Exhibits A and B) by the terms of which the executive officers were to elect not to be covered by the policy, and by which the carrier was to be relieved from that liability, and believed that such riders had been so executed and attached; that the policy was issued after this agreement was reached; that the original policy had been lost or mislaid, and could not be found, but that the copy in evidence, apart from the riders, was correct; that no premiums, based on the salaries of the executive officers, were ever paid by the employer pursuant to this policy, and none were demanded; and the intention of the parties was that none should be paid.

There is no proof, however, that the policy as in fact prepared and delivered, had attached thereto the "riders" of exclusion above mentioned, except that of the agent to the effect that it was the intention and instruction of the carrier to the scrivener to so attach them, and his belief that his directions in this particular were followed; but the policy does not appear to have been read by any one after its preparation.

In this state of the record the Board reached two conclusions, *first*, that it was free to deny reformation of the policy without any evidence before it, except the copy mentioned, that the policy expressed the contract entered into, and despite the uncontroverted evidence to the contrary of all the parties interested therein; and *second*, that when the widow, sole dependent, declined to press a claim for compensation, the Board was free to make an award against the employer and the carrier in favor of the Industrial Commissioner. Both of these decisions were error.

The uncontroverted proof is that the policy does not express the agreement made by the parties thereto, and this fact is contended for or conceded by all of them. And the bargain which was in fact made, in so far as it differs from the copy printed in the record, appears in the evidence, viz., that the executive officers were not to be covered by the policy, and the policy was to be drawn accordingly. Thus upon the death of the president of the employer no right to compensation arose in his dependent. The Board was possessed of the equity power necessary to reform the policy to conform to the intention of the parties, and the right of the employer and carrier to that relief was evident. Reformation should have been decreed. (*Lewitt & Co., Inc.,* v. *Jewelers' Safety F. Soc.,* 249

N. Y. 217, 221–223, revg. 221 App. Div. 727; *Royal Indemnity Co.* v. *Heller*, 256 N. Y. 322; *Barone* v. *Ætna Life Ins. Co.*, 260 id. 410.)

And even if this were not so, the Board had no power to make an award to the Industrial Commissioner. It seems clear that the Board proceeded on the theory that if a dependent could not be induced to claim compensation, either because she was not entitled to it, or because she saw fit to waive it, this was tantamount to an assignment by her of her rights, if she had any, to the Industrial Commissioner. No such action or reasoning is justified by the statute. The statute provides that "The employer, or if insured, his insurance carrier, shall pay into such special fund for every case of injury causing death in which there are no persons entitled to compensation the sum of five hundred dollars;" and again it provides, "The employer, or if insured, his insurance carrier, shall pay into the vocational rehabilitation fund for every case of injury causing death, in which there are no persons entitled to compensation, the sum of five hundred dollars" (Workmen's Comp. Law, § 15, subds. 8 and 9). Here it is beyond dispute and conceded that the deceased president left a widow who was his only dependent, and no one questioned her right to compensation, if any one had such a right. From the merest reading of the statute it is seen that the only basis of authority given to the Board for the replenishment of the funds mentioned is that which arises when injury causes death, and there are no persons entitled to compensation. The right, if any, to an award of compensation is to be determined as of the time of the accident (§ 16, subd. 5). And the unwillingness of the dependent widow to exercise her right, if she had one, does not enlarge the power of the Board, or justify an attempt to impose a burden on the employer and the carrier which the statute does not. If the policy be not reformed, the widow would be entitled to receive any award to be made; if the policy is to be reformed, the deceased is not deemed an employee, and no claim to compensation arises (§ 54, subd. 6). In either event the Industrial Commissioner has no rights.

The award should be reversed, the policy reformed, and the claim made under section 15, subdivisions 8 and 9, on account of the death of William J. Gleasner, should be dismissed.

HILL, P. J., RHODES, CRAPSER and BLISS, JJ., concur.

The award of the State Industrial Board is reversed, and the matter remitted, with costs against the State Industrial Board, for a determination that the policy of workmen's compensation insurance dated January 1, 1931, be reformed, and the claim of the Industrial Commissioner and of the Commissioner of Taxation and Finance on account of the death of William J. Gleasner, deceased, be dismissed.