**BROIDY v. STATE MUT. LIFE ASSUR. CO. OF WORCESTER, MASS., et al.**

No. 121, Docket 21842.

United States Court of Appeals
Second Circuit.

Argued Dec. 15, 1950.

Decided Jan. 11, 1951.

James E. Birdsall, of New York City (Warner & Birdsall and Arthur G. Warner, all of New York City, on the brief), for plaintiff-appellant.

Geo. Stephen Leonard, of New York City (Cravath, Swaine & Moore and Maurice Rosenberg, all of New York City, on the brief), for defendant-appellee State Mut. Life Assur. Co. of Worcester, Mass.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

The plaintiff here sued in a state court for a judgment against the defendant Insurance Company reforming, so far as applicable to her late husband, a group life creditors policy previously issued to the other defendant, First Federal Savings and Loan Association of Hempstead. The group policy was a blanket one covering certain debtors of the Loan Association as identified by certificates given them upon making application and being accepted by the Company. In this instance the insurance was upon the life of plaintiff's husband, Lieutenant Colonel Vinton E. Broidy, U.S.A.A.F., who made application March 15, 1948, and who was killed in the line of duty at an Army Air Show on August 21, 1948. The Company refused payment on the ground that an "Aviation Limitation" clause in the group policy made it inapplicable to death by aviation in a noncommon-carrier plane and Mrs. Broidy then sought this reformation of the policy to supply the coverage which, she contends, was originally intended. The Company removed the case to the federal court, since it was a citizen of Massachusetts and the other parties were citizens of New York, with like interests though appearing nominally as opponents. The plaintiff made a motion to remand; and this the district

court denied, upon realigning the Loan Association along with the plaintiff as being united in interest adversely to the Insurance Company. D.C.E.D.N.Y., 87 F.Supp. 271. The district court also held that Mrs. Broidy was the real party in interest and hence denied a motion to dismiss for lack of an indispensable party or in the alternative to stay the proceedings until a representative of the husband's estate could be brought in. D.C.E.D.N.Y., 10 F.R.D. 195. Then after a hearing on the merits the court held that plaintiff was bound by the policy limitation on the authority of agents to alter the policy and that the evidence did not warrant the relief sought. D.C.E. D.N.Y., 91 F.Supp. 447. Plaintiff now appeals from the resulting judgment for the defendants.

The occasion for the insurance here was the purchase by plaintiff and her husband of residential property in Garden City, Long Island, of which title was being taken in the name of "Vinton E. Broidy and Virginia E. Broidy, his wife" and upon which the Loan Association was granting a first mortgage of approximately $11,000. Under the group policy each of the Association's debtors could secure coverage upon his indebtedness up to $10,000, with the Association as beneficiary on his death, and with payment by him of the premiums meanwhile to the Association and by the latter to the Company. Accordingly at the time of the closing of the transfer and loan at the office of the Association, Colonel Broidy made application for $10,000 of this insurance. The circumstances under which this took place are a subject of dispute among the parties which we must now consider. But first we may dispose of the two preliminary attacks upon the jurisdiction of the court below.

 We think the court correctly found jurisdiction. The complaint here claimed no relief against the Loan Association, but alleged joinder of it only because it was a party to the group insurance policy. Notwithstanding the plaintiff's present attempt to show the contrary it is clear that the Association has every interest in supporting the plaintiff's recovery, and no advantage in defeating it is anywhere indicated or suggested in the record. The Association's answer, mainly in the shape of technical denials of knowledge or information sufficient to form a belief, if not "a lapse on the part of counsel," as suggested below, 87 F.Supp. 271, 272, is obviously a purely formal disclaimer of responsibility for the suit. Hence the realignment of the parties to find diversity jurisdiction was appropriate. City of Indianapolis v. Chase Nat. Bank of City of New York, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47; 3 Moore's Federal Practice ¶ 19.03, 2d Ed. 1948; cf. original 28 U.S.C.A. § 1447(c) enacted in 1948, but omitted as unnecessary by amendment of 1949. As to plaintiff's right to sue it appears, as Judge Galston pointed out, 10 F.R.D. at 196, that under New York law the effect of the estate created by the present conveyance to husband and wife is that on the death of one the fee vests entirely in the other as the representative of the unified ownership. In re Lyon's Estate, 233 N.Y. 208, 135 N.E. 247. The plaintiff was therefore the appropriate person to sue, and no further joinder was necessary for the reasons given in the opinion below.

Coming to the merits we shall rely on Judge Byers' opinion in 91 F.Supp. 447 as setting forth much of the detail, while we confine ourselves to a rehearsal of the more important facts. At the closing on March 15, 1948, there were present Colonel Broidy in uniform, his wife, their attorney, Nathaniel Taylor, and an insurance salesman, Emil K. Naumer. There had also been present the grantors, with an attorney, and the real estate agent who sold the premises; but they were not produced as witnesses and apparently did not participate in the insurance phase of the conference. Naumer was an accredited agent for a life insurance company. He was not such an agent for this company, although he had assisted their agents, Messrs. Craig & Herren, insurance brokers, in the placing of this form of insurance for this Association on previous occasions pending the proper indoctrination of an Association officer. Naumer first suggested ordinary life insurance to Colonel Broidy; and when this was not accepted he brought up group

life insurance. This was acceptable and a request or application therefor was executed, with Naumer signing as a witness. The testimony shows that there was some discussion of the aviation risk, but the witnesses are at odds as to its trend. Mrs. Broidy, supported by Taylor, insisted that Naumer told her husband that the policy "pays unconditionally and absolutely." Naumer, however, asserted that he said he was uncertain about the coverage of the group policy, that he went downstairs to locate the master policy, but it was not available at the time, and that he then told Colonel Broidy he could not locate it, but Colonel Broidy nevertheless decided to make the application to see if the coverage would be granted. The district court had great difficulty with this evidence, at first trying to find a way of reconciling the conflict, but finally deciding that this was impossible. Colonel Broidy so obviously fulfilled the two normal requirements for the insurance of being a wage earner, with an agreement to liquidate the obligation in not more than 240 equal monthly installments, that Naumer could have had no misgivings as to acceptance, "and consequently the conversation between him and Colonel Broidy and Mr. Taylor must have taken a wider range than he testified to on the witness-stand." So the judge says: "The testimony on the whole leaves this situation very much in doubt, but the decision will proceed on the assumption that Naumer indeed said something which apparently led the Broidy's [sic] and Taylor to believe that Colonel Broidy would be covered in the event of such a happening as actually took place, although I do not believe or find that he made a deliberate and intentional false representation." 91 F.Supp. at 451.

Thus whatever hesitancy the trial judge may have had in reaching his decision, ultimately he did find, as we must read his decision, that Naumer gave the insured reason to believe he was covered in his usual normal activities as an officer in the Air Force. Certainly there was substantial evidence to support this view, and it does avoid the absurdity that an air force officer should take out insurance of so little value as this would otherwise have been to him. In view of this finding the application, the form and contents of which were designed and controlled by the Insurance Company, becomes of great importance.

This is a printed "Request for Insurance Coverage Under Group Creditors Insurance Policy Issued by State Mutual Life Insurance Company of Worcester, Massachusetts To" the Loan Association, the name of the latter being inked in. Answers to printed questions then likewise appear in ink; these cover the usual range of personal history and physical condition. The name and address of Employer is given as "U. S. Air Force, Mitchell Field"; occupation as "Leut. [sic] Colonel." There are also a statement with reference to the amount and terms of the loan, and the answers "Yes" to the questions: "If loan is secured by mortgage (a) Do you intend to reside there?" and "(b) Are you the principal wage earner who is an obligor on the loan?" Then among agreements at the foot of the page appear the following: "(3) That all benefits provided by the Group Creditor's Insurance Policy shall be paid to the Creditor to be applied to my indebtedness on the loan in accordance with the terms of said Group Policy. (4) That if within two years from the date the insurance becomes effective I shall commit suicide, whether I be at the time sane or insane, the Insurance Company shall be liable only for the return of the amount of premiums paid under said Group Policy in respect to my insurance."

Thus in this document there appears no mention of any aviation limitation, or of any limitation upon an agent's authority—the defenses now strongly relied upon. There is not even an identification of a specific written document claimed to contain the contract or its location if a view of it were ever to be sought. There is, however, quite prominently displayed the suicide clause in the form employed in the master policy. Here we have of course the occasion for this litigation. As the trial judge well says: "Why the Aviation Limitation should not have been referred to in the same way that the sui-

cide clause was in that application has not been the subject of explanation. Had that precaution been taken, this controversy would have been avoided." 91 F.Supp. at 450.

On May 7, 1948, the Company sent Colonel Broidy a certificate of coverage, together with a covering letter, and payment of premiums began. The certificate stated that Broidy was insured in accordance with and subject to the conditions and provisions of "the Company's Group Life Creditors Policy No. GC-203" and then set forth a "Summary of Plan of Insurance." Next followed these not altogether clear and congruent statements: "The provisions printed on the reverse side of this Certificate are hereby incorporated and made a part of this Certificate. This Certificate is not a part of and does not alter, modify, or constitute any of the provisions of said Policy or as it may be subsequently amended, altered, or cancelled." On the reverse appeared certain provisions as to "Termination of Insurance," the "Suicide" clause, the "Aviation Limitation," [1] and the effect of the creditor's statements as warranties. There was no reference to a limitation on the agent's authority. The master policy No. GC-203, however, in addition to the suicide and aviation clauses, did contain also provisions stating that modifications of the policy could be made only through riders or endorsements signed by certain specified officers, and "No agent can make, alter, or discharge this contract or extend the time for the payment of the premium or premiums." And the decision below went upon Naumer's lack of authority to waive the aviation limitation.

■■■ Though Naumer was not a licensed agent for the defendant Company, the district court assumed that for present purposes he should be considered in the same situation as Craig & Herren, the Company's agents who had originally solicited the business from the Loan Association. This appears to be correct. Naumer had arranged a considerable number of creditor participations to the apparent satisfaction of the parties. Thus, on his own testimony, he had written all up to and including Colonel Broidy's, which was the fiftieth. The Company was somewhat casual about the form of solicitation for this group insurance; an official from the home office testified that it sent "all material incidental to the case" to the policyholder, including "publicity material" and "certain material for sending us monthly statements as to the amount of premiums due, and also a manual of how they should handle this whole business." Naumer was thus acting until an official of the Loan Association could be trained to take over the task. Obviously he was not an interloper, but had been accepted as acting for the Company. There is no reason why he should not come within the general rule in New York of apparent authority in an agent to bind the insurer unless the insured has notice of an actual limitation on the agent's authority. Abbott v. Prudential Ins. Co. of America, 281 N.Y. 375, 24 N.E.2d 87; Bible v. John Hancock Mut. Life Ins. Co., 256 N.Y. 458, 176 N.E. 838; Drilling v. New York Life Ins. Co., 234 N.Y. 234, 242, 243, 137 N.E. 314.

The question thereafter comes down to that of notice of the agency limitation here. There is no claim of actual knowledge and legal notice must therefore rest on the existence of a duty upon the part of Colonel Broidy to examine the certificate when it was received and to make objection if he was not satisfied with it. This was the earliest time when any such obligation could rest upon him; for up to then certainly his attention was not directed to any limitations in the master policy or indeed to the policy itself. Nor would a reading of the certificate have been completely informative. As we have seen, the references therein to the master policy were equivocal; they were asserted not to affect the master policy, and omitted all reference to a limitation upon an agent's authority. But the certificate did contain the aviation limitation and we may assume arguendo that if there was a duty to read and explore promptly, enough was present

---

1. Reprinted at page 448 of 91 F.Supp. Concededly its terms exclude coverage here.

to put Colonel Broidy upon some sort of inquiry.

Whether the recipient of an insurance policy issued pursuant to a prior application is under a duty to examine it at once on pain of being otherwise bound by all its terms cannot be said to be controlled by any single general principle. Some cases involving recovery at law appear to have held an insured guilty of laches in failing to read and take exception to the policy. Bollard v. New York Life Ins. Co., 98 Misc. 286, 162 N.Y.S. 706, affirmed 182 App.Div. 915, 168 N.Y.S. 1102, affirmed 228 N.Y. 521, 126 N.E. 900; Satz v. Massachusetts Bonding & Ins. Co., 243 N.Y. 385, 153 N.E. 844, 59 A.L.R. 606; Minsker v. John Hancock Mut. Life Ins. Co., 254 N.Y. 333, 338, 339, 173 N.E. 4, 81 A.L.R. 829. Others have stressed a contrary approach for reformation; thus the following statement from Albany City Savings Institution v. Burdick, 87 N.Y. 40, 46, 47, has been reaffirmed: "It has certainly never been announced as the law in this State that the mere omission to read or know the contents of a written instrument should bar any relief by a way of a reformation of the instrument on account of mistake or fraud." See also Bidwell & Banta v. Astor Mut. Ins. Co., 16 N.Y. 263, 266; L. Lewitt & Co. v. Jewelers' Safety Fund Soc., 249 N.Y. 217, 164 N.E. 29; D. R. Paskie & Co. v. Commercial Cas. Ins. Co., 223 App.Div. 603, 229 N.Y.S. 121; Northeastern Shares Corp. v. International Ins. Co. of New York, 240 App.Div. 80, 84, 269 N.Y.S. 351; De Leon v. Aetna Life Ins. Co. of Hartford, 194 Misc. 953, 965, 88 N.Y.S.2d 415. Since in a code state the form of remedy sought becomes comparatively unimportant and relief is to be accorded the plaintiff in accordance with the underlying legal principles, it seems clear that these precedents merely represent differing conclusions based upon different factual backgrounds. There is thus no arbitrary duty placed upon an insured to do what the courts continually point out is contrary to actual human practice; the facts of each case must be examined to see if fairness dictates there such a burden upon the insured.

That this is so is indicated in an opinion by Judge Lehman, the author of the opinion in the Bollard case, supra, in Davern v. American Mut. Liability Ins. Co., 241 N.Y. 318, 325, 150 N.E. 129, 131, 43 A.L.R. 522, where, after pointing out that the contract became complete only upon delivery and acceptance of a policy embodying the terms of the contract and that negligent failure on the part of the plaintiff to read the contract where he should have read it would bind the plaintiff as completely as if there had been full discussion and agreement, he then continues: " 'Throughout the formation of contracts it is to be observed that not assent, but what the other party is justified as regarding as assent is essential.' Williston on Contracts, § 35. The question in this case is whether the defendant was justified in regarding as assent to all the terms of the policy its retention by the plaintiff without objection, or whether on the contrary the plaintiff had the right, without reading it, to rely on the defendant sending a policy which contained only declarations actually made, and the defendant misled the plaintiff into apparent acceptance of a contract containing false affirmations." Later on, in affirming a verdict directed for the plaintiff, he said, 241 N.Y. at 327, 150 N.E. at 132: "If he did rely upon the defendant sending him a policy based upon those representations and no others upon which the defendant had stated in writing it would issue the policy, the defendant has misled the plaintiff, and should be estopped from urging a defense based on its own wrong."

If we are correct in our appraisal of New York law—and it appears to represent the general trend of insurance law—then it seems to us reasonably clear that the defendant company must be held here. For the circumstances are considerably stronger for the plaintiff than in many of the cases cited above or in our own case of Gaunt v. John Hancock Mut. Life. Ins. Co., 2 Cir., 160 F.2d 599, 601, certiorari denied John Hancock Mut. Life Ins. Co. v. Gaunt, 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858, where the requirement for retroactive effect of the policy "in the very teeth of the language used" in the appli-

496

cation was termed "unpardonable." See Schultz, The Special Nature of the Insurance Contract, 15 Law & Contemp. Prob. 377; 60 Harv.L.Rev. 1164. This was not insurance of the ordinary life form where the course of application followed by later issuance of a policy containing the formal contract is now well known and where the application almost invariably puts the applicant upon explicit notice of intended policy limitations. In fact this appears to be rather a new form of insurance where the application has not yet become standardized in due company form. As we have seen, it did not contain the slightest suggestion of the limitations later most pertinent; nor did it suggest ways in which definite knowledge should be ascertained. The circumstance that, as disclosed, an aviation officer was applying for special insurance to protect his purchase of a home was also most pertinent. Under the authorities cited it would be too harsh a requirement to hold that the insurance company's acceptance of the offer which it had directed and canalized in its own type of application could be limited and made nugatory by the insertion of details not brought home to the applicant.

Some question has been made as to the possibility of reformation without some formal findings of mistake or fraud upon which to base it. The cases do use these terms in describing insurance company action where a provision has been asserted in a policy contrary to a previous agreement even though a specific fraudulent intent is lacking. See, e. g., the Davern, Paskie, and De Leon cases, supra. As a matter of fact under modern procedure this is all of little importance, since the judgment must contain the relief adequate for the circumstances. Fed.Rules Civ.Proc. rule 54(c), 28 U.S.C.A.; Gins v. Mauser Plumbing Supply Co., 2 Cir., 148 F.2d 974; Ring v. Spina, 2 Cir., 148 F.2d 647, 653, 160 A.L.R. 371. It is not even necessary to point out that the complaint contained the usual additional request for "such other, further and different relief as to the Court may seem just and proper." Here the actual contract was for

the insurance as intended, which must ultimately be paid to the Loan Association. So long as the judgment declares that essential fact, the essentials are covered and it is unnecessary to add further language, now merely confusing surplusage, of reformation or rewriting of the master policy.

The judgment is reversed and the case is remanded for judgment for plaintiff in accordance with this opinion.