C. L. HOLDING CORP., Respondent, *v.* SCHUTT COURT HOMES, INC., et al., Appellants.

First Department, June 18, 1952.

*Jacob Rapoport* of counsel (*Nathan J. Gottlieb* with him on the brief; *Jacob Rapoport,* attorney), for appellants.

*Arthur N. Field* for respondent.

BERGAN, J.   Plaintiff as landlord entered into a written lease with defendant Schutt Court Homes, Inc., for rental of a store. The lease provided that the tenant should use the premises " for the sale of groceries, meats, fruits, vegetables, beer and other types of food products ".

The proof is that defendant's sublessee, Flag Stores, Inc., sells meat which is prepared for sale before it comes to the store by being cut, wrapped in a display package, and placed for sale in a refrigerator from which the customer makes selection.   The meat thus prepared is refrigerated but not frozen. It is " fresh pre-packaged meat ".

The complaint sought a reformation of the lease to define the word " meats " as meaning " delicatessen and processed meats only ".   Upon a record of very equivocal proof on the difference between the " pre-packaged meat " and " processed meat " as terms which the parties may have had in mind in discussions leading to the signing of the lease, the court at Special Term has entered a judgment which is a definitive supplement to the word " meats " in the lease.   The lease is reformed " so that the word ' meats ' * * * shall read ' delicatessen and processed meats only ' " and the operation of the store is restricted in respect of meats to " that type which are ordinarily sold in a delicatessen store and which fall within the category of processed meats ".

The operation of the judgment itself leaves open wide areas of controversy over terms; adds nothing in the way of precise definition of what should or should not be sold in the store, and makes no reference at all to the actual point in issue between the parties whether fresh pre-packaged meat can be sold in the store.   What falls within the term " processed meats " and what is " that type " of meat " ordinarily sold " in " a delicatessen store " are all terms surely as pregnant with controversy as the generic term " meats " used in the lease in the first place.

We think that when an instrument is signed with due formality renting a store for the sale of " meats * * * and other types of food products " and judicial intervention is sought to rewrite the language to say something other than words in common usage and of common meaning express, the complaining party is bound to make a strong showing that it was intentionally misled into signing such an instrument.

It is certainly not enough to show that what it understood by " meats " was delicatessen meats or processed meats. The term " meats " has no such limitation in common use, and if plaintiff wanted to have the type of meats to be sold limited it could undoubtedly have found language fit for the purpose. Not only was this general and commonly understood term used, but the lease contained a broad covenant by the plaintiff that it would not let or permit to be used any other part of the premises " for the sale or exhibition of * * * meats ". This controversy arises in part from the landlord's claim that it has the right to rent another store in the premises to a meat dealer for the exclusive sale of fresh meats.

Thus plaintiff presses on us the dual and ingenious argument that the general word " meats " in the clause defining the scope of tenant's occupation means all meat but fresh meat; and that the same term " meats " in the exclusion clause as to other tenants means no other meat but fresh meat.

The lease as signed was not the first draft presented to the plaintiff. Objection was made by plaintiff to a previous draft because its terms would, in plaintiff's view, have given too broad a scope to the tenant's exclusive business activities, and the lease was redrafted to meet plaintiff's objections in this respect. Thus, full opportunity was presented then to have delimited what was intended by the word " meat " as used in both drafts.

The record is not entirely clear as to the conversations before the signing of the lease. At one point plaintiff's president indicated that before the lease was signed there was a specific discussion about handling fresh meats in which the tenant's representative stated tenant intended to sell fresh meats and plaintiff's president said that this would not be permitted. If this conversation took place before the lease was signed, and the record is susceptible of such a construction, the differences in opinion, whatever they were, must be deemed settled by the use of the general word " meats " in the written instrument executed with due formality.

A somewhat different conversation seems to be relied on by plaintiff in support of the claimed misrepresentation. This was, in substance, a statement by the tenant's representative that what he meant by " processed meats " was meat like that sold in another store. Plaintiff's president inspected this other store and found the meat there to be " delicatessens and processed meats, like corned beef, tongue, salami, roast beef, liverwurst." Assuming this representation to have been made, it does not establish a material difference in the intent with which processed meat was represented in this conversation and the " pre-packaged " refrigerated meat sold in actual operation under the tenancy.

It is not enough to prove that the parties had a different understanding about what was intended when a word of general and common meaning is used in an instrument. The mistake must be mutual; or the writing induced by fraud clearly established. We think the burden has not been met in either respect.

The judgment should, accordingly, be modified by reversing so much thereof as granted judgment to plaintiff, and by dismissing the complaint, with costs to defendants, and as so modified the judgment should be affirmed, with costs of this appeal to defendants-appellants.

CALLAHAN, J. (dissenting). A distinction based on the nature of the meats to be sold in a delicatessen store and in a store for the sale of fresh meats was well established in the city of New York at the time of the execution of the present lease. Prior to the making of this lease the lessee told the landlord that the business the lessee proposed to carry on would be similar to that carried on in other stores operating under the name of New Yorker Delicatessen Stores. He also informed the landlord that meats to be sold would be processed meats precooked or frozen, and that no fresh meats would be sold. It seems to me that there is ample evidence to support the finding of the trial court granting reformation so as to limit the sale of meats in the leased premises to delicatessen and processed meats only and that such terms have a sufficiently well known meaning in this city to make the reformed lease definite and certain. The judgment should be affirmed.

PECK, P. J., and COHN, J., concur with BERGAN, J.; CALLAHAN, J., dissents in opinion in which VAN VOORHIS, J., concurs.

Judgment modified by reversing so much thereof as granted judgment to plaintiff, and by dismissing the complaint, with costs to defendants, and, as so modified, affirmed, with costs of this appeal to defendants-appellants. Settle order on notice. [See *post,* p. 916.]