■ JOHN L. HAYES, Appellant, v. CITY OF YONKERS, Respondent.—In an action to remove a cloud on title to certain real property purchased at a public auction sale conducted by the City of Yonkers, the city interposed a counterclaim to reform the deed. The appeal is from a judgment entered after trial dismissing the complaint on the merits and awarding the city reformation of the deed delivered by it to appellant so as to exclude from the description of the property conveyed the rear 25 feet of all but two of the lots therein mentioned which abut on the Nepperhan River. Judgment reversed and a new trial granted, with costs to appellant to abide the event. It appears that prior to the sale the respondent's offering of 50 vacant lots, not otherwise detailed, was advertised on January 21, 1949 in a public newspaper, stating that the "list of parcels" was subject to error or withdrawal. Prior to this date, the property was also advertised in a brochure, not offered in evidence by either party, circulated among the general public. Appellant claims that this brochure stated that the boundary lines of the lots here involved extended along the banks of the Nepperhan River and that he acquired such information from reading the brochure. Respondent maintains that the brochure did not

indicate that the lots extended to the river's edge. On or about January 28, 1949 certain administrative employees of respondent initiated what was described as a "temporary apportionment" of the property on respondent's records of assessed valuations. However, the learned Trial Justice, on appellant's motion, excluded any evidence that a final "apportionment" had actually been effected because respondent failed to produce the documentary evidence thereof. On February 5, 1949 the lots here in question were auctioned to appellant as highest bidder. Before taking bids, the auctioneer announced that a riparian strip, 25 feet in width across the rear of these lots, would be excluded from the sale and that title thereto would be reserved by respondent with adjustment in assessed valuation for the property withheld. Appellant concedes that an announcement was made by the auctioneer but claims that its content was hazy in his mind. He also concedes that before the sale he never examined respondent's tax map and never inspected the property so as to ascertain the extent of the land and its river frontage, but relied as to these elements upon the contents of the brochure. Upon appellant's making the successful bid for the property he signed, at the auctioneer's request, the usual "bid for purchase" which declared that his offer was subject to the acceptance by respondent's Common Council and listed the lots, without excepting therefrom the 25-foot strip. On February 8, 1949 the Common Council adopted a resolution approving the sale to appellant of the lots involved. This resolution referred to the lots by numbers, without reservation of title to the 25-foot strip and without mention of the auctioneer's statement with respect thereto. Thereafter, and on or about March 29, 1949, a change was physically made on respondent's tax map, as admitted in respondent's answer but challenged by its proof, so that the 25-foot strip mentioned was established, with a separate and new lot number. This change, of course, indicated that appellant's lots had no river frontage. By deed dated June 1, 1949 and delivered on June 20, 1949 title was formally conveyed to appellant. This deed continued to refer to the lots in question by the numbers set forth in the bid and the resolution of the Common Council and made no reference to respondent's reservation of title to the lot newly mapped on March 29, 1949. Together with the deed, respondent delivered a survey which showed the lots in question extending to the river front. In dismissing the complaint, the learned Special Term ruled that the auctioneer had the right to state to the bidders present that the 25-foot strip of land in question was excluded from the sale, and the fact that appellant did not hear or comprehend the announcement was of no legal force (*Burling* v. *Brinn*, 116 Misc. 130) to defeat respondent's right to retain title to this strip. In granting judgment reforming the deed by excluding therefrom the conveyance of the strip, the learned Special Term held that appellant's formal bid, the Common Council's resolution, and the deed were all drawn in error in describing the property, resulting from mistake in failing specifically to exclude from the listing of the lots the 25-foot strip of river front property. The learned Special Term grounded its conclusion on a finding of fact that appellant, prior to the sale, had no knowledge that the lots in question abutted on the Nepperhan River. In our opinion, the proof was unsatisfactory and inconclusive as to whether appellant actually had learned before the sale that the lots in question bordered on the water front. Under the circumstances of this case the production of the brochure, or an explanation of its absence, was required in the face of the conflict as to its contents. If appellant was in fact apprised therefrom that the lots extended to the river front, there would be no mutual mistake which could serve as the basis for granting reformation for the reason that only a unilateral mistake existed on

respondent's part (*Isaacs* v. *Schmuck*, 245 N. Y. 77, 82; *Metzger* v. *Ætna Ins. Co.*, 227 N. Y. 411, 417; *C. L. Holding Corp.* v. *Schutt Court Homes*, 280 App. Div. 341, 344, affd. 307 N. Y. 648). In a case of this type reformation may be granted only where the party seeking such remedy has established his right to relief "by clear, positive and convincing evidence" (*Amend* v. *Hurley*, 293 N. Y. 587, 595), which indisputably shows that there is no issue about what the parties agreed to, and that an error occurred in reducing that agreement to writing (*Hart* v. *Blabey*, 287 N. Y. 257, 262; *Lewitt & Co.* v. *Jewelers' Safety Fund Soc.*, 249 N. Y. 217, 221). While we agree with the learned Special Term that the announcement by respondent's auctioneer was binding on appellant, the authority of the auctioneer to vary the published terms of sale had to be established, since this was not a transaction between private parties but involved the sale of property belonging to a municipality. The decision of a municipality to make a contract to sell real property must be evidenced through the adoption of a resolution by its governing body (*Village of Lake George* v. *Town of Caldwell*, 3 A D 2d 550, 553). Under section 12-a of article V-A of the Charter of the City of Yonkers (L. 1908, ch. 452, as amd.) the power to fix terms of sale is vested solely in the Common Council, whose mandate is to be carried out by the City Manager, or other officer designated by the council. Under the law, the City Manager or such other officer could not impose conditions not authorized by the legislative act pursuant to which such sale is made (*Buckley* v. *Mayor & Aldermen of Jersey City*, 105 N. J. Eq. 470, affd. 107 N. J. Eq. 137; *Bassett* v. *Mayor & Bd. of Commrs. of Borough of Wildwood Crest, N. J.*, 122 N. J. L. 250). Only restrictions countenanced by law may be incorporated into the municipality's terms of sale (*Papadinis* v. *City of Somerville*, 331 Mass. 627, 633; *Escrow* v. *Borough of Haworth*, 36 N. J. Super. 469; *Matter of Prudential Ins. Co.*, 238 Minn. 497). Under these authorities it was incumbent upon respondent to establish that the variance made by the auctioneer in curtailing the size of the lots being offered for sale was duly authorized by the Common Council or other appropriate body, either before or after the sale — a matter of fact which concededly does not appear in the present record on appeal. Under the present state of proof, the Common Council acted subsequent to the sale but to date has invoked no curative procedure to repudiate its purported authorization of the conveyance to appellant of water-front property (cf. *New York Cent. & Hudson Riv. R. R. Co.* v. *City of Buffalo*, 85 Misc. 78, 85). Its right to do so seemingly is not to be defeated by a mere failure to disaffirm or by a recognition not in itself valid, if no elements of estoppel are present (cf. *New York Cent. & Hudson Riv. R. R. Co.* v. *City of Buffalo, supra*; 63 C. J. S., Municipal Corporations, § 969, p. 520). The record presently before us makes no showing as to estoppel. In the absence of proof of the auctioneer's authority to effect the variance, and because of the uncertainty of the date when the boundary lines were changed on the tax map, the law favors a presumption which upholds the legality of a conveyance by a municipality (63 C. J. S., Municipal Corporations, § 968, subd. b, p. 519). Moreover, when the boundary lines of a municipal grant are in doubt and it appears that a survey accompanied the deed, it is presumed that the survey is a true copy of the larger map of the real property of the municipality insofar as it relates to the property conveyed (*Goodhue* v. *Cameron*, 142 App. Div. 470, 476). Unless these factual elements be clarified, respondent's right to recovery on its counterclaim for reformation may not be properly established. In addition, respondent, seeking equitable relief upon a new trial, may well be under the burden of restoring part of the price

paid by appellant for the lots (cf. *Matter of Hurwitz* v. *Moore,* 132 App. Div. 29, 31), and of restoring to appellant part of the taxes paid by him on all the lots, insofar as the 25-foot strip is concerned. We find no basis for holding that a proper apportionment had been effected in this case in view of the ruling by the learned Special Term, made during the course of trial, that no apportionment other than a temporary apportionment had been proved. A new trial is granted in the interests of justice so that each of the parties will have a fair opportunity to attempt to overcome the deficiencies of proof herein set forth. Wenzel, Acting P. J., Beldock, Ughetta and Hallinan, JJ., concur; Murphy, J., concurs in the reversal of the judgment with respect to the counterclaim, but dissents from the reversal of the judgment with respect to the complaint and from the granting of a new trial, and votes to dismiss the counterclaim and to affirm the judgment with respect to the complaint, with the following memorandum: In my opinion, appellant failed to sustain the burden of proving the allegations of his complaint, and the respondent likewise failed to sustain the burden of proving the allegations of its counterclaim.